Argued October 26, affirmed November 17, petition for
rehearing denied December 13, 1972

SCOGGINS ET AL, *Petitioners, v.*
MORGAN ET AL, *Respondents.*

YOST ET AL, *Petitioners, v.*
MORGAN ET AL, *Respondents.*

STRONG, SR. ET AL, *Petitioners, v.*
MORGAN ET AL, *Respondents.*

503 P2d 509

504

*Keith E. Tichenor,* Portland, argued the cause for petitioners. With him on the brief were Pozzi, Wilson & Atchison and Raymond J. Conboy, Portland.

*Michael G. Holmes,* Portland, argued the cause for respondent Pacific Maritime Association. With him on the brief were McCulloch, Dezendorf, Spears & Lubersky, Portland.

No appearance for respondent Ross Morgan, Administrator, Employment Division.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

FORT, J.

This is an appeal by numerous employes from decisions of the Employment Appeals Board which denied them unemployment compensation for the period they were unemployed during the summer and early fall of 1971 as the result of the West Coast dock strike.

The dispute was over the terms for renewal of the labor contract between the International Longshoremen's and Warehousemen's Union (ILWU) and the Pacific Maritime Association (PMA), the employers' bargaining association.

After several months of negotiations the labor agreement expired on June 30, 1971. On the following day the ILWU called a strike. The strike continued until October 6, when an 80-day injunction was ordered under the Taft-Hartley Act. This case involves claims by certain workmen for unemployment benefits prior to the issuance of that injunction.

ORS 657.200 (1) provides:

"An individual is disqualified for benefits for

> any week with respect to which the administrator finds that his unemployment is due to a labor dispute which is in active progress at the factory, establishment or other premises at which he is or was last employed or at which he claims employment rights by union agreement or otherwise."

The petitioners in these consolidated cases concede they became unemployed by reason of a labor dispute and therefore are disqualified under ORS 657.200 (1), but argue they are requalified under ORS 657.200 (3), which provides:

> "This section does not apply if it is shown to the satisfaction of the administrator that the individual:
>
> "(a) Is not participating in or financing or directly interested in the labor dispute which caused his unemployment; and
>
> "(b) Does not belong to a grade or class of workers of which, immediately before the commencement of the labor dispute, there were members employed at the premises at which the labor dispute occurs, any of whom are participating in or financing or directly interested in the dispute."

■■ The burden of establishing a prima facie case was on the claimants to show they requalified under ORS 657.200 (3). *Cameron v. DeBoard; MacInnes,* 230 Or 411, 370 P2d 709 (1962); *Baker v. Cameron,* 240 Or 354, 401 P2d 691 (1965). The Employment Appeals Board's findings need only be supported by "substantial evidence." ORS 183.480 (7)(d); *Henzel v. Cameron,* 228 Or 452, 463-64, 365 P2d 498 (1961).

The first group of petitioners we shall consider are called "casual" longshoremen. They are one of three classes of longshoremen. The other two classes, "A" and "B" longshoremen, are members of the ILWU

while the "casuals" are not. Under the contract, however, these classifications determine the hiring priorities, the casuals being selected only after all the "A" and "B" men are offered work. Petitioners concede that pay is the same for each of the three classes of longshoremen. Pay of all longshoremen is governed by the contract.

Essentially, the casual longshoremen petitioners argue the Employment Appeals Board erred in finding that they were directly interested in the labor dispute inasmuch as they are not members of the ILWU and in no way participated in the dispute.

■ Whether the claimants were "directly interested" in the labor dispute is a question of fact. *Henzel v. Cameron,* supra, 228 Or at 463.

■ The facts that the casuals are not members of the ILWU and did not participate in the strike are not controlling here. Nor are the facts that the casuals do not enjoy the fringe benefits of union membership and are allowed to work only on a daily basis after all the union "A" and "B" longshoremen have been assigned. However, when casuals are selected to work, the ILWU-PMA agreement provides they are assured the identical working conditions and wage scale on any particular job as the "A" and "B" members. The contract required they be hired under its provisions.[1]

---

[1] The labor contract between the ILWU and the PMA contained the following provisions relating to longshoremen:

"8.52 Where such gangs and men cannot be dispatched from the fully registered list, then limited registered men and casuals, if required, shall be dispatched.

"* * * * * *

"8.56 Arrangements for employment of casuals shall be made by the Joint Labor Relations Committee of the port.

"* * * * * *

"9.1 The principle of promotion from the ranks is hereby recognized and agreed to."

This strike involved, inter alia, dispute over such wages and working conditions.

The court stated in *Henzel v. Cameron,* supra, 228 Or at 465:

"An individual is deemed 'directly interested' in a labor dispute when his wages, hours or conditions of work will be affected favorably or adversely by the outcome. * * *"

Since by its provisions all the conditions in ORS 657.200 (3) must co-exist before the disqualification of ORS 657.200 (1) can be avoided, our affirmance as to the Employment Appeals Board's findings and conclusions regarding the casuals under subsection 3(a) makes unnecessary any determination as to the Employment Appeals Board's findings and conclusions regarding the casuals under subsection 3(b).

Petitioners concede that the position of the Class "B" or partially registered checkers or clerks is only slightly different from the casual longshoremen. They point, however, to no facts which establish any basis for concluding that under the ILWU-PMA Clerk's contract[2] the test of *Henzel v. Cameron,* supra,

---

[2] The labor contract between the ILWU and the PMA contained the following provisions relating to clerks:

"1.1 This Contract Document, as supplemented by agreements (Port Supplements and Working Rules) for the various port areas covered hereby, shall constitute the collective bargaining agreement between the parties hereto. This Contract Document shall apply to all employees who are employed by the members of the Association to perform work covered hereby. All clerks' work covered by this Contract Document is assigned to clerks with the exceptions and enlargements set forth in this Section 1.

"* * * * *

"8.41 First preference of employment and dispatch shall be given to fully registered clerks who are available for em-

above quoted, the result here reached by the Employment Appeals Board should be different with respect to Class "B" clerks who are petitioners here. We conclude that the result with respect to them must be the same as that reached for the "casuals."

Thus, with regard to those petitioners who work as "A" or "B" longshoremen or clerks, it follows that the findings and conclusions of the Employment Appeals Board should be affirmed.[9]

---

ployment covered by Section 1 of this Contract Document in accordance with the rules and regulations adopted by the Joint Port Labor Relations Committee. A similar second preference shall be so given to limited registered clerks. The Joint Coast Labor Relations Committee shall be authorized to effectuate such preferences in such manner and for such times and places as it determines in its discretion.

"\* \* \* \* \*

"8.53 Qualified limited registered clerks and casuals shall be dispatched in all classifications when required.

"\* \* \* \* \*

"9.1 The principle of promotion from the ranks is hereby recognized and agreed to by the parties to the contract. For the purposes of this Contract Document, promotion is defined as upgrading registered clerks covered by this Contract Document and the classifications contained in the respective Port Supplements."

[9] The Appeals Board concluded:

"\* \* \* The picketing of the port facilities by members of Locals 8 and 40 of ILWU conclusively refutes any contention of non-participation, financing or interest in this labor dispute which is advanced by the claimants who are either 'A' or 'B' men in their respective unions. This conclusion is diverted solely by the particular claimants named herein not engaging in the picketing. The law includes any claimant within the disqualified group where there is anyone of his grade or class who was working at this place of employment and thereafter participated in the dispute in any respect. Members of both Local 8 and 40 participated in the picketing of the premises where these claimants had worked. Thus, the five claimants who have fully or limited registered status within their particular union are precluded from requalifying and avoiding the disqualification of ORS 657.200 for the period within our jurisdiction."

The other petitioners to be considered, "walking bosses," work in the capacity of foremen for the crews of longshoremen. They belong to Local 92, which is separate from the Longshoremen locals that called the strike, yet they are members of the ILWU. The "walking bosses" operated under a separate contract with PMA, yet there is sufficient evidence to support the findings[4] that the custom has been to negotiate their contract only after the longshoremen's contract is settled and that their wage rate is customarily based on a fixed percentage increment above the basic longshoremen wage rate. The walking bosses have failed to establish their exemption under subsection 3(b) of ORS 657.200 as interpreted by *Cameron v. DeBoard; MacInnes,* supra, 230 Or at 425-30.

██ The Board correctly concluded that

"* * * [t]he inter-relationship between the contracts covering the striking union members and the contract covering the walking bosses discloses a consummate interest by the walking bosses in the success of the negotiations with respect to the contract for the longshoremen. A successful negotiation of improved working conditions for the longshoremen would place the walking bosses in a more favorable position for obtaining more desirable working conditions, wages and other benefits by reason of this correlation between the two contracts. Thus there is no basis to sustain their contention of a disinterest in the dispute which was in active progress between July 1 and October 9, 1971.

"The work of the walking bosses was integrated with the work of the members of the striking union. Neither one could work without the presence of the other. This integration of the work requires us to include the walking bosses within the same general

[4] See n 3, supra.

class of workers which immediately before the commencement of the labor dispute were employed at the premises where the labor dispute occurred. * * *"

■ ■ One petitioner, Mildenberger, was employed full time by Cargill Elevator Company at its plant located at the north end of Terminal 4 at the Port of Portland. Cargill was not a member of the PMA. Mildenberger had worked for the company some 11 years. The record is unclear on the scope of his duties. He testified only that he did not remember just what he was doing the day before the strike was called. He was, however, a member of the ILWU in the "A" classification of longshoremen. He was a dues-paying member in good standing of the union, voted in favor of the strike and personally engaged in picketing on behalf of the union at Terminals 1 and 2 of the Port of Portland, but did not picket at Terminal 4. This terminal was, however, picketed by fellow ILWU members. Thus we conclude that there was sufficient evidence to support the administrator's finding that he was disqualified for benefits under ORS 657.200 (1). *Baker v. Cameron,* supra; *Cameron v. DeBoard; MacInnes,* supra. It is obvious that the above facts fully support the administrator's conclusion that Mildenberger failed to meet the requirements of requalification under ORS 657.200 (3) since he was actively participating in the labor dispute by engaging in picketing.

Finally, petitioners contend that ORS 657.200 violates the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution and the equal protection clause of this state, Oregon Constitution, Art I, § 20.

They contend the statute without rational basis both has unequal application to members of the same class and discriminates without rational basis between those to whom it applies and others similarly situated.

■ We disagree. ORS 657.200 in our view expresses a valid legislative purpose in that it states that it is the policy of this state to remain neutral in labor disputes. Thus it is not an unreasonable classification to classify persons engaged in "a labor dispute which is in active progress" at the places specified in ORS 657.200 (1) and (2) as ineligible for unemployment compensation. *Cameron v. DeBoard; MacInnes,* supra; *In re Abernathy,* 259 NC 190, 130 SE2d 292, *appeal dismissed* and *cert denied* 375 US 161, 84 S Ct 274, 11 L Ed 2d 261 (1963) ; *Matson Terminals, Inc. v. Cal. Emp. Com.,* 24 Cal 2d 695, 151 P2d 202 (1944).

■ Nor is the standard provided to guide the administrator in determining when an employe idled by such a labor dispute is eligible for requalification under ORS 657.200 (3) so vague, indefinite, arbitrary or capricious as to warrant the conclusion here urged of unlawful delegation of power to the administrator by the legislature. *See: State ex rel. v. Malheur County Court,* 185 Or 392, 203 P2d 305 (1949) ; *So. Pacific Co. v. Con. Freightways,* 203 Or 657, 281 P2d 693 (1955).

For the reasons stated above, all of the Employment Appeals Board decisions involved in this appeal are affirmed.