# JAMES E. FRICK, INC.,
## for Fleming Foods West, Inc.,
### *Petitioner,*

*v.*

# EMPLOYMENT DIVISION et al,
### *Respondents.*

## (89-AB-174; CA A60090)

790 P2d 33

Jerald B. Keene, Portland, argued the cause for petitioner. With him on the brief was Roberts, Reinisch & Klor, P.C., Portland.

No appearance for respondents.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

### WARREN, J.

Employer petitions for review of the award of unemployment compensation benefits to claimants by the Employment Appeals Board (EAB). We affirm.

Employer operates a wholesale grocery business. Its warehouse employees, some of whom are claimants here, are members of Teamsters Local 206; employees who are truck drivers belong to Teamsters Local 162. Each local has a separate collective bargaining contract with employer. Employer's warehouse manager testified that Local 206 had agreed to a new contract with employer, but had not yet signed the contract when Local 162 turned down a similar offer from employer and went on strike.

Duties of warehouse employees include receiving products from the truck loading docks, stocking the warehouse, filling orders and placing orders on the docks to be shipped. The truck drivers unload products from the trucks to the docks, load from the docks to the trucks and deliver products by truck. Employer testified that each group of employees can perform its work without the other. After employer's warehouse manager became aware that Local 162 was going to strike, he called a meeting with Local 206, the warehouse employees, and advised them not to cross the picket line because of previous disharmony in a similar situation. Cameron, the business agency for Local 206, told the local members that they had a contract with employer and that they were free to cross the picket line.

The strike began August 31, 1988, and ended September 23, 1988. Claimants did not work during the strike. No claimant walked the picket line established by Local 162. Cameron testified that he gave no monies to the strikers or to Local 162 and that to his knowledge no member of Local 206 gave money to the strikers or to the striking local. After the strike was over, Local 162 signed an agreement with employer that was identical to that offered before the strike. Local 206 signed the same contract that it had agreed to before the strike began. The contracts of the two locals were similar but provided different pay rates and benefits.

Division denied unemployment benefits to claimants, and the referee affirmed. EAB reversed and allowed benefits,

concluding that, although claims would be disqualified by *former* ORS 657.200(1), they avoided the disqualification under another section of the statute.

*Former* ORS 657.200 provided, in pertinent part:

"(1) An individual is disqualified for benefits for any week with respect to which the assistant director finds that the unemployment of the individual is due to a labor dispute which is in active progress at the factory, establishment or other premises at which the individual is or was last employed or at which the individual claims employment rights by union agreement or otherwise.

"* * * * *

"(3) This section does not apply if it is shown to the satisfaction of the assistant director that the individual:

"(a) Is not participating in or financing or directly interested in the labor dispute which caused the unemployment of the individual; and

"(b) Does not belong to a grade or class of workers of which, immediately before the commencement of the labor dispute, there was members employed at the premises at which the labor dispute occurs, any of whom are participating in or financing or directly interested in the dispute."

Claimants were unemployed because of a labor dispute, so they would be disqualified under *former* ORS 657.200(1). Employer argues that EAB erred in finding that claimants avoid the disqualification under *former* ORS 657.200(3). Claimants have the burden to show that they meet all of the criteria in both subsections (3)(a) and (3)(b) of the statute. *Cameron et al v. DeBoard; MacInnes et al,* 230 Or 411, 370 P2d 709 (1962).

Employer challenges a number of EAB's findings and conclusions of law. We review the findings for substantial evidence. If a finding is reasonable in the light of countervailing as well as supporting evidence, the finding is supported by substantial evidence. ORS 183.482(8)(c); *Garcia v. Boise Cascade Corp.,* 309 Or 292, 295, 787 P2d 884 (1990).

Most of employer's arguments focus on subsection (3)(b), which disqualifies a claimant who belongs to the same "grade or class" of workers who were working at the same

premises and participated in, financed or were directly interested in the dispute. Employer argues that, as a matter of law, claimants are in the same class as the strikers, because the two locals are part of the same international union. Employer broadly interprets the Supreme Court's reference in *Cameron et al v. DeBoard; MacInnes et al, supra,* to a union's strike fund: "[A] claim may fail even though the workman has no other connection with a given dispute than his chance membership in whatever turns out to be a 'class' for the purposes of administering the fund." 230 Or at 417. Employer apparently reasons that all locals of the same international union, such as the Teamsters, contribute to a common "strike fund," and so all members of any local of that international union are members of the same "class." We do not read the *dictum* in *Cameron* so broadly.

■ In *Scroggins/Yost/Strong v. Morgan,* 11 Or App 502, 509, 503 P2d 509 (1972), we applied subsection 3(b) as interpreted by *Cameron et al v. DeBoard; MacInnes et al, supra.* We discussed whether "walking bosses" avoided disqualification during a strike by longshoremen. The walking bosses were members of the same international union as the longshoremen, the International Longshoremen's and Warehousemen's Union, but were organized in a different local. Our conclusion that the "walking bosses" did not avoid disqualification was based on the community of interest between the locals and the level of integration of the work, not on the fact that the union local was part of the same international union as the strikers. 11 Or App at 510. Membership in the same international union does not automatically put members of two different locals in the same class.

The definition of "class" is based on two concepts: "integration of work" and "community of purpose." *Cameron et al v. DeBoard; MacInnes et al, supra,* 230 Or at 421. Employer argues that EAB erred in finding that the work of the two unions was not "integrated," arguing that the work of the drivers and warehouse workers is similar to the work of two phases of a production line or continuous operation. 230 Or at 425.

■■ Integration of work of nonstrikers with striking workers creates a *prima facie* case for membership in the same class. 230 Or at 425. However, "the most important factor in

the application of [subsection] (3)(b) is the presence or absence of a community of interest between the workmen involved in a labor dispute and their nonstriking workmen." 230 Or at 427; *see also McIntire v. Employment Division,* 24 Or App 67, 544 P2d 173 (1976). Thus, even if the two unions are integrated, nonstrikers do not belong to the same class as strikers if there is no community of interest. The community of interest of two groups of workers at the same worksite is based on "the relationship, if any, between wage, work-condition and fringe-benefit improvements gained by [the strikers] as the result of [the strike] and similar gains flowing to the various nonstriking unions." *Cameron et al v. DeBoard; MacInnes et al, supra,* 230 Or at 429.

■ Employer first challenges the findings of the Board that the contracts signed by the two locals were "different." Although at the hearing the employer's warehouse manager first characterized the contract offers to each union local as "identical," he then stated that there were several differences between them, listing specifically differences in vacations and pay. We held that EAB's findings that the two contracts were different is reasonable in light of all of the evidence on the record.

■ More importantly, employer argues that the similarity of contracts and the fact that Local 206 did not sign a contract until the Local 162 strike was over created a community of interest between Local 206 and Local 162. In *Scroggins/Yost/Strong v. Morgan, supra,* we found that the "walking bosses" had a community of interest with the strikers, because they customarily negotiated their contract after the longshoremen's contract was settled and received a fixed percentage increment over the longshoremen's wage rate. There was no such custom in this case. The evidence is undisputed that Local 206 and employer had agreed to a contract before the strike was called and that Local 206 members were told by their union representative that they could continue to work on the basis of that contract. On the whole record, EAB's finding that Local 206 did not have a "community of interest" with the strikers and were not members of the same class is reasonable and is therefore supported by substantial evidence. Claimants are not prevented from qualifying under subsection (3)(b).

 A different but related question, which employer confuses with its discussion of "class," is whether claimants' own local financed the labor dispute. All members of Local 206 are members of the same class. If *any* members of claimants' class helped to finance the labor dispute, then claimants may not avoid disqualification. As we stated previously, the *dictum* in *Cameron v. DeBoard; MacInnes, supra,* does not require contributors from different union locals to a common international strike fund to be treated as members of the same class. We also agree with other jurisdictions that a local union does not finance a strike by another local of the same international merely because some regular dues go to the international's strike fund. *See, e.g., General Motors Corp. v. Bowling,* 85 Ill 2d 539, 426 NE2d 1210 (1981); *see, generally, Annot.,* 62 ALR3d 314, 336 § 10 (1975 & 1989 Supp). Even if we assume that some regular dues from Local 206 went into a strike fund from which Local 162 drew during the strike, that would not constitute financing under subsection (3)(b). In addition, there was evidence that the Local 206 business agent, Cameron, told the members that they were free to cross the picket line, permitting an inference that the agent would not tell members of Local 206 to cross a picket line in a strike that Local 206 was financing. Considering all the evidence in the record, there was substantial evidence that Local 206 was not financing the strike.

 Employer also challenges EAB's conclusion that claimants avoided disqualification under subsection (3)(a). It contends that there is not substantial evidence to support the finding that claimants did not give financial support to the striking truck drivers. There was no evidence to the contrary, and claimant Frick's testimony that no member of Local 206 gave financial support, if believed, provided substantial evidence for the finding.

 Employer also argues that claimants, as individuals, were directly interested in the labor dispute and so cannot qualify. *Former* ORS 657.200(3)(a). It relies on the arguments discussed under subsection (3)(b) that the contracts were identical and that Local 206 did not sign its contract until after the strike. For the reasons discussed, we hold that there was substantial evidence for EAB to infer that no claimant had a direct interest in the labor dispute.

Although another factfinder might have looked at the same evidence and reached a different conclusion, our role is to determine whether EAB's findings are based on substantial evidence. The findings are supported by substantial evidence, and we affirm.

Affirmed.