Argued November 26, 1975, affirmed February 3, reconsideration denied March 10, petition for review allowed April 13, 1976

## THE SKOOKUM CO., INC., *Petitioner,*

*v.*

## EMPLOYMENT DIVISION et al, *Respondents.*

### (No. 75-AB-465, CA 4840)

545 P2d 914

*James B. Ruyle,* Portland, argued the cause and filed the brief for petitioner. With him on the brief were Sabin, Newcomb, Sabin & Meyer, Portland.

*Donald S. Richardson,* Portland, argued the cause and filed the brief for respondents Wells, Gibson, McDonald, Mandrones, Webber, Burke, Olsen, Haliski, Erceg, Peterson and Clegg. With him on the brief were James W. Kasameyer and Richardson & Murphy, Portland.

No appearance for respondent Employment Division.

Before Schwab, Chief Judge, Thornton and Lee, Judges.

LEE, J.

**LEE, J.**

This is a judicial review of a final order of the Employment Appeals Board allowing benefits. ORS 657.282. The Board affirmed the decision of the referee, ORS 657.270(2), which had allowed benefits for a 40-day period hereinafter described.

The issue was whether claimants were subject to the "labor dispute" disqualification in ORS 657.200(1), which provides:

"An individual is disqualified for benefits for any week with respect to which the administrator finds that his unemployment is *due to* a *labor dispute* which is in active progress at the factory, establishment or other premises at which he is or was last employed or at which he claims employment rights by union agreement or otherwise." (Emphasis supplied.)

The Board decided the issue in the negative. The issue before this court is whether the Board's order is supported by substantial, reliable and probative evidence in the whole record. ORS 183.480(7)(d).

Claimants and other employes were represented by two unions in labor negotiations for a new contract with the employer. No agreement had been reached when the old contract expired on July 31, 1974. On August 2, 1974 claimants and other employes commenced a strike called by the unions. The following chronology of events ensued.

On August 26 the employer presented a contract proposal to the unions. In early September, personnel were hired for replacement of the striking employes. On November 20 the employer and the unions had a meeting.

At the meeting the union representatives said that they would submit the proposal to their membership for a vote. The employer said that there were two further issues which had to be settled: (1) the rehiring of strikers and (2) whether the replacement personnel should be required to join the unions.

On November 27 the unions informed the employer that the August 26 proposal had been accepted by the membership and that the employes would report for work Monday morning, December 2. (The pickets had been removed immediately after the ratification vote was completed.) On the morning of December 2 the employes did show up for work but the employer did not put them to work.

On January 10, 1975 the employer and the unions reached a complete agreement, which was signed January 31, 1975. This agreement duplicated the August 26 proposal in every respect except as to the two issues which the employer claimed were unresolved on November 20, 1974. Claimants and other strikers were never rehired.

The employer contends that there was a "labor dispute" in active progress until January 10, 1975 when complete agreement on the contract was reached and that claimants' unemployment was caused by the dispute. Claimants contend that their unemployment after December 2 was because their jobs had been filled.

We need not here define a "labor dispute" within the purview of ORS 657.200 because this case turns on the causal connection between the dispute (if there was one) and the unemployment. Was the latter caused by the former? We think it was not.

If it were only the lack of a final contract that was precluding the claimants from working for the employer, then, they would have been rehired when the final contract was signed—but they were not.

■ We hold that the "labor dispute" disqualification does not apply where the claimant employes have been permanently replaced. *Robert S. Abbott Publishing Co. v. Annunzio,* 414 Ill 559, 112 NE2d 101, 104 (1953); *Jackson et al. v. Rev. Bd., etc.,* 138 Ind App 528, 215 NE2d 355 (1966); Annotation, 63 ALR3d 88, 208, § 31[b] (1975). While there are other cases that take a

contrary position, they usually involve additional evidence that the employe *could* return to work if they desired; in the instant case this is not so. *See* 63 ALR3d, supra.

In the case at bar the replacement personnel were retained and the striking employes were never rehired. It was, thus, the determination of the employer to not rehire the striking employes that was the cause of their unemployment.

■ To fall under the sanction of ORS 657.200(1) the claimant's unemployment must be "due to" the labor dispute. We agree with the court in *Brechu v. Rapid Transit Co.*, 20 Conn Sup 209, 210, 131 A2d 211, 215 (1957) which determined that the words "due to" mean "caused by." They do not mean merely "occurring in the course of." The element of causation is indispensable.

There was testimony that the employer said, on November 20, 1974, that there would be no work for the striking employes. Indeed, at the hearing the following interchange took place between the referee and the employer's representative:

"Q   Irregardless of the contract and its acceptance or non-acceptance, on December 2, 1974 was there employment available for any of these individuals?

"A   No. No."

■ We conclude that there was substantial evidence to support the Board's finding that claimants' unemployment after December 2, 1974 was not due to a "labor dispute" but, rather, it was because "the employer had no work available."

Affirmed.

SCHWAB, C. J., dissenting.

The referee found the strike was settled on December 2, 1974, and the Appeals Board, one member dissenting, adopted the referee's decision

making no independent findings of fact on this issue. As the majority opinion points out, the referee and the Appeals Board were wrong.

On August 26 the employer made an offer to the union. The union turned it down. In November, the strike apparently having not gone well from the union's standpoint, the union tried to accept the employer's August proposal. The employer in effect said, "No, conditions have changed and we will now not settle on the terms we offered in August." As the majority also points out, an agreement was actually reached on January 10 and it contained provisions that were not in the August proposal.

The majority states, "It was * * * the determination of the employer to not rehire the striking employes that was the cause of their unemployment." I find no such finding of fact in the referee's or the Board's decision.

I am of the opinion that the only reasonable construction that can be placed on the evidence taken as a whole is that the claimants had not abandoned the union and had not abandoned the strike. In purportedly reporting for work on December 2, they were in effect acting as agents of the union in an attempt to maneuver the employer into treating its August 26 proposal as still outstanding and subject to acceptance by the union at that late date. I would reverse.

For the foregoing reasons, I respectfully dissent.