Argued June 7, affirmed September 30, 1976

## THE SKOOKUM CO., INC., *Petitioner,*
### *v.*
## EMPLOYMENT DIVISION et al, *Respondents.*

554 P2d 520

*James B. Ruyle,* of Sabin, Newcomb, Sabin & Meyer, Portland, argued the cause for petitioner.

*Donald S. Richardson,* Portland, argued the cause for respondents. With him on the brief were James W. Kasameyer and Richardson & Murphy, Portland, for respondents Wells, Gibson, McDonald, Mandrones, Webber, Burke, Olsen, Haliski, Erceg, Peterson and Clegg. Also on the brief was Peggy Viamonte, Appellate Division Assistant, Salem, for respondent Employment Division.

Before Denecke, Chief Justice, and McAllister,

O'Connell, Holman**, Tongue, Howell and Bryson, Justices.

HOWELL, J.

---

** Did not participate in this decision.

**HOWELL, J.**

This is a petition for review of a decision by the Court of Appeals affirming an award of unemployment benefits to certain employees of the Skookum Company for the period of December 1, 1974, to January 10, 1975. The Court of Appeals held that these claimants were entitled to unemployment compensation following their attempt to return from a strike. 24 Or App 271, 545 P2d 914 (1976). The majority concluded that as of December 2 the cause of claimants' unemployment was their employer's decision to hire permanent replacements for the striking workers and not the labor dispute. Thus, the court found that the claimants were not precluded from receiving unemployment benefits by the "labor dispute" disqualification contained in ORS 657.200(1). We granted review in order to consider the applicability of ORS 657.200(1) when replacements are hired for employees who thereafter offer to return to work and end the dispute. ORS 657.200(1) provides as follows:

"An individual is disqualified for benefits for any week with respect to which the administrator finds that his unemployment is due to a labor dispute which is in active progress at the factory, establishment or other premises at which he is or was last employed or at which he claims employment rights by union agreement or otherwise."

The basic facts are essentially undisputed. The claimants and other employees, who were represented by two labor unions, commenced a strike against Skookum on August 2, 1974. On August 26, Skookum presented the unions with a proposal which they rejected. On September 3, 1974, the employer began to hire replacement personnel for the strikers. The company treasurer testified that a letter was sent to strikers stating that "we would have to get back into production and we would have to start hiring people." He also stated the replacements were hired "on a permanent basis."

On November 20 the employer met with the unions

and a federal mediator. At that time the union representatives stated that they would now accept the company's August 26 proposal, would submit it to their members for a ratification vote, and would have the strikers back to work soon thereafter. However, the company representative stated that they did not have openings for the returning strikers at that time and that they were also concerned about whether the replacement employees would have to join the union. The meeting ended without resolution of either of these problems.

On November 27 the unions informed the employer that the August 26 proposal had been ratified, and that the strikers would return to work the next Monday, December 2. By that day, picket lines had been removed and about 30-35 strikers appeared for work. They were told that there was no work available for them, and their request for layoff slips was refused. The record indicates that by December 2, when the strikers reported for work, all their positions had been filled by replacement personnel.

On January 10, 1975, the employer and the unions reached a final agreement which was signed on January 31, 1975. The agreement was essentially the same as that set forth in the August proposal but contained an additional provision that employees hired before January 10 would not have to join the union, as well as a "letter of understanding" which stated that the company would "place the names of those employees who have not been reinstated as of January 10, 1975, on a preferential hiring list."

The Employment Division Administrator awarded unemployment benefits to the employees as of December 1, 1974, and the employer requested a hearing. After a hearing, held on April 28, 1975, the referee made findings of fact and concluded that the labor dispute disqualification of ORS 657.200(1) did not apply after December 2, because, after the strikers attempted to return to work and removed the picket

lines, their "continued unemployment was due to another reason, which was the employer had no work available for them." The Appeals Board affirmed, one member dissenting.

The Court of Appeals also affirmed this decision, on the grounds that as of December 2 the claimants' unemployment was not caused by the labor dispute, but by the employer's decision to permanently replace them. Schwab, C.J., dissented on the basis that the claimants' attempt to return to work was merely a ploy to maneuver their employer into treating the August proposal as still outstanding and subject to acceptance at that time.

■■ On appeal from a decision of the Employment Appeals Board, our review is limited to an examination of the record to determine if there is substantial evidence to support that decision. *See Bay v. State Board of Education,* 233 Or 601, 378 P2d 588 (1963); ORS 657.282; 183.482(7) and (8)(d). In this case the referee found that the claimants' unemployment after December 1 was not caused by a labor dispute in active progress, but rather by the fact that their employer no longer had any work available for them. This is the critical finding in this case. The Appeals Board reviewed the transcript of the hearing, analyzed the findings and conclusions of the referee, and found that the referee's decision was "correct, proper and conplete." Although there is also evidence to the contrary, we find that the record contains substantial evidence to support the referee's conclusion as adopted by the Appeals Board.[1]

There was testimony that at the November 20 meeting the employer stated that there were no openings for the returning strikers and that on

---

[1] ORS 183.470 requires state agencies to accompany their final orders in contested cases with a statement of their findings of fact and conclusions of law which support their decision. In our view, the Appeals Board's specific adoption of the findings and conclusions of the referee was sufficient to meet the requirements of ORS 183.470 under the circumstances of this case.

December 2, when claimants reported to work, they were told only that there was no work available. Although a company representative testified that these claimants were also told that they could not work because there was no contract, this statement was directly contradicted by two of the claimants who appeared at the hearing. The record also clearly indicates that at the time the claimants reported for work on December 2, 1974, all available job openings had been filled by replacement personnel. This fact is underscored by the following exchange which took place between the referee and the employer's representative at the hearing:

"Q Irregardless of the contract and its acceptance or non-acceptance, on December 2nd, 1974 was there employment available for any of these individuals?

"A No. No."

In our view, this is substantial evidence in support of the referee's and the Appeals Board's conclusion that as of December 2, 1974, when they attempted to return to work, the claimants' continued unemployment was no longer "due to a labor dispute" but was caused by another factor, which was that their employer no longer had any work available for them.

In its petition for review, Skookum contends that claimants' action in reporting for work was a mere ploy and was not sufficient to terminate the strike as the cause of their unemployment. There is little evidence in the record to support this argument, and there is substantial evidence to support the contrary conclusion which was reached by the referee and a majority of the Appeals Board. Similarly, although it may be true, as Skookum contends, that there was no *final* agreement reached as of December 2, 1974, it does not necessarily follow that the labor dispute continued to be the effective cause of claimants' unemployment after they again reported for work. In our view, the fact that no final agreement had yet been reached does not *automatically* preclude a finding

that, following a bona fide attempt to return to work, the claimants' continued unemployment was due to another cause—such as the fact that their employer no longer had any work available for them. Therefore, on the basis of the record in this case, we cannot say, as a matter of law, that the conclusion reached by the referee and the Appeals Board was incorrect.

Affirmed.