- "Argued March 22, affirmed May 9, 1977"
- "BARRIER et al, Petitioners,"
- "v."
- "EMPLOYMENT DIVISION et al, Respondents."
- "(No. 76-AB-1026, CA 7197)"
- "563 P2d 1230"
- "[ 387 ]" at bottom

Argued March 22, affirmed May 9, 1977

# BARRIER et al, *Petitioners,*
*v.*
# EMPLOYMENT DIVISION et al, *Respondents.*
## (No. 76-AB-1026, CA 7197)
563 P2d 1230

Liana Colombo, Eugene, argued the cause for petitioners. With her on the brief was Kulongoski, Heid, Durham & Drummonds, Eugene.

No appearance for respondent, Employment Division.

Nelson D. Atkin, II, Portland, argued the cause for respondent, The Dalles Cherry Growers. With him on the brief were Kenneth E. Jernstedt and Dezendorf, Spears, Lubersky & Campbell, Portland.

Before Schwab, Chief Judge, and Thornton and Richardson, Judges.

RICHARDSON, J.

**RICHARDSON, J.**

Petitioners appeal a decision of the Employment Appeals Board (Board) finding that they were disqualified to receive unemployment benefits because they were unemployed due to a labor dispute. ORS 657.200(1).

Petitioners were employed by The Dalles Cherry Growers, an employer who processed fresh cherries as they were harvested beginning in late June and during the winter and spring months processed cherries stored in brine. The amount of work and the number of workers needed fluctuated throughout the year. Petitioners had been working in the brine operation in the early months of 1976, but because of a decrease in work were laid off in late March and early April. They expected to return to work when the fresh cherry season began.

The workers in employer's plant, including petitioners, were members of a union and were covered by a collective bargaining agreement. This agreement by its terms was to expire on May 1, 1976. During the early part of 1976 the union and the employer were engaged in efforts to renegotiate the agreement. When negotiations failed to produce an agreement on May 11, 1976, the employes who were still working at the plant went out on strike and began to picket the plant.

When the strike began the employer called all of petitioners and offered them the jobs vacated by the striking employes. All of the petitioners declined to cross the picket line and accept the employment. In addition they joined the picket line and received strike benefits from the union strike fund.

The agreement provided for a system of recalling laid off workers according to seniority. Although this agreement expired May 1, 1976, the seniority provision was not an issue in the negotiations. The employer honored this provision and utilized the seniority list in recalling the petitioners.

Petitioners had been receiving unemployment benefits during the period of their layoff. When the strike began the Employment Division disqualified some of the petitioners from receiving further benefits. A hearing was held before a referee at the request of the employer and the disqualified claimants. The referee found all of the petitioners were unemployed due to a labor dispute and disqualified them from receiving unemployment benefits under ORS 657.200. The referee also found they were not disqualified for refusing to accept suitable employment under ORS 657.176. The employer did not contest this latter part of the referee's decision. On petitioners' appeal the Board concluded their unemployment was due to a labor dispute and they were therefore subject to disqualification under ORS 657.200.

■ The scope of review is that of a contested case. ORS 657.282, 183.482(8). The order should be reversed if we find it to be unlawful in substance or not supported by reliable, probative and substantial evidence in the record. *McKinney v. Employment Division,* 21 Or App 730, 537 P2d 126 (1975).

ORS 657.200(1) provides:

"(1) An individual is disqualified for benefits for any week with respect to which the administrator finds that his unemployment is due to a labor dispute which is in active progress at the factory, establishment or other premises at which he is or was last employed or at which he claims employment rights by union agreement or otherwise."

If a claimant is disqualified under this provision he may nevertheless requalify under ORS 657.200(3), if he:

"(a) Is not participating in or financing or directly interested in the labor dispute which caused his unemployment; and

"(b) Does not belong to a grade or class of workers of which, immediately before the commencement of the labor dispute, there were members employed at the premises at which the labor dispute occurs, any of whom

are participating in or financing or directly interested in the dispute."

■ The first inquiry is whether this statute applies to petitioners, i.e., whether the employer's plant is a premise at which the petitioners last worked or at which they claim employment rights. In this instance all of the petitioners had last worked at The Dalles Cherry Growers and all claimed employment rights under the union agreement. They had not been terminated or placed on indefinite layoff, but were off temporarily with the expectation they would be recalled when the fresh cherry season began. They possessed recall rights under the union contract based on a seniority list which could be enforced against the employer. *See Zdanok v. Glidden Company,* 288 F2d 99, 90 ALR 2d 965 (2d Cir 1961), *aff'd* 370 US 530, 82 S Ct 1459, 8 L Ed 2d 671 (1962). There was sufficient attachment to The Dalles Cherry Growers to maintain an employer-employe relationship for disqualification of ORS 657.200 to be invoked if their lack of work was due to a labor dispute.

The next inquiry is whether the petitioners' unemployment from the inception of the strike on May 11 to June 4, 1976, when the new agreement was signed, is due to a labor dispute. In *Skookum Co., Inc. v. Employment Div.,* 24 Or App 271, 545 P2d 914, *Aff'd* 276 Or 303, 554 P2d 520 (1976), we held the words "due to a labor dispute" meant caused by a labor dispute and it was not sufficient for disqualification if the unemployment merely occurred during the course of a strike.

At the outset petitioners contend the Board's order is unlawful in substance because there was no finding their unemployment was caused by a labor dispute. They argued the Board must first make such a finding before approaching the determination of whether petitioners can requalify for benefits under subsection (3) of ORS 657.200. We agree with petitioners that such a finding is required, but we disagree with their

contention that the required finding was not made by the Board.

After 14 specific "findings of fact" the order of the Board continued:

"CONCLUSION AND REASONS: We agree with the referee that the claimants' unemployment was due to a labor dispute in active progress at the premises of the employer during the weeks in issue."

The apparent argument is since this statement was labeled "conclusion and reasons" it does not qualify as a finding. In reviewing an administrative order we look to the substance of the order's various parts and not strictly to the labels the Board uses in constructing the order. A finding of fact is a conclusion drawn by way of reasonable inference from the evidence. *Henzel et al v. Cameron et al,* 228 Or 452, 365 P2d 498 (1961). In arriving at the conclusion the Board had to apply a rule of law derived from ORS 657.200, but of necessity the Board was required to draw factual inferences from the evidence presented in order to make the conclusion. Although labeled a conclusion the statement in substance is a finding of fact.

Petitioners next argue the labor dispute was not the cause of their unemployment. They contend they were laid off and this layoff would have continued whether or not the strike was called. The causal relationship, the argument continues, is a "but for" relationship and an employe can be disqualified only if he would be working "but for" the strike. It is true the initial cause of the unemployment was a lack of work at the employer's plant and had the layoff continued during the strike their unemployment would not be due to a labor dispute. However, when the strike began the employer recalled petitioners and the layoff was terminated. They could have been working but for their refusal to cross the picket line and report for work. The petitioners are in no different position than if they had reported for work then immediately joined the strike and refused to work further. It follows their unemploy-

[ 392 ]

ment from May 11 until June 4, 1976, was caused by and therefore due to a labor dispute.

Petitioners contend ORS 657.200 must be interpreted in light of ORS 657.195:

"(1) Notwithstanding any other provisions of this chapter, no work is deemed suitable and benefits shall not be denied under this chapter to any otherwise eligible individual for refusing to accept new work under any of the following conditions:

"(a) If the position offered is vacant due directly to a strike, lockout or other labor dispute.

"* * * * *"

They argue the jobs made available by the strike are "new work" as to them and they cannot be disqualified for refusing these jobs.

■ This provision was inserted in the statute to comply with section 3304(a) of the United States Internal Revenue Code, 26 USC § 3304(a), which sets forth certain conditions to be met by a state in order to obtain credit against taxes imposed under the Federal Unemployment Act. One requirement is the inclusion in the state act of a provision similar to ORS 657.195(1)(a).

In determining if the provision modifies the labor dispute disqualification of ORS 657.200 to the extent of requalifying workers whose unemployment is caused by a labor dispute we must interpret the phrase "new work." By statute (ORS 657.195(2)), this section "* * * shall have the same meaning as the provisions of section 3304(a)(5) of the United States Internal Revenue Code." (26 USC § 3304(a)(5)(1970)). It thus becomes important to determine the congressional purpose in imposing this requirement on the states.

■ In *Merryman v. Administrator,* 23 Conn Sup 233, 181 A2d 260 (Super Ct 1962), the Connecticut Superior Court reviewed the congressional purposes in a case factually similar to the case at bar. We find that court's analysis of the authorities and determination of congressional intent to be persuasive. From *Merry-*

*man* we learn the purpose of this required statutory provision was to prevent a worker who was a stranger to the labor dispute from having to choose between becoming a strikebreaker or losing unemployment benefits. The right to refuse the job vacated because of a strike is dependent upon whether the job is "new work." This term presupposes an absence of an employer-employe relationship or of an attachment of the claimant to the proffered job. In this case the petitioners were not terminated but were on a temporary layoff with the expectation they would be recalled based on the seniority list when work became available. The jobs they were offered were jobs they had been in just prior to the layoff or jobs they had worked at on prior occasions. Their right to recall based on seniority was an enforceable right against the employer despite the fact the underlying agreement had expired before the recall. *See Zdanok v. Glidden Company, supra.* They were not strangers to this labor dispute but were directly involved by membership in the striking union, payment of union dues which were used to finance the strike, collection of strike benefits, participation in picketing and finally they would be included in any agreement that resulted from the labor negotiations. It follows they had not refused "new work" created by a labor dispute.

There is yet another reason petitioners cannot avail themselves of ORS 657.195(1)(a). If, as the Board determined, petitioner's unemployment is due to a labor dispute and additionally they are not requalified under ORS 657.200(3), they are not "otherwise eligible individuals" as required by ORS 657.195(1) before that statute becomes applicable.

Petitioners, disqualified for unemployment benefits under subsection (1) of ORS 657.200, are not requalified under subsection (3) of that statute quoted earlier in this opinion. The Board specifically found, and the findings are supported by substantial evidence, that petitioners refused to cross the picket line and participated in picketing employer's plant. This is

sufficient to deny requalification. *Cameron et al v. DeBoard; MacInnes et al,* 230 Or 411, 370 P2d 709 (1962).

The Board's order was lawful in substance and supported by substantial evidence and must be affirmed.

Affirmed.