Argued and submitted January 16,
remanded for further consideration February 19, 1980

# BIERLY,
*Petitioner,*

*v.*

# EMPLOYMENT DIVISION, et al,
*Respondents.*

## (No. 79-AB-670, CA 15462)

606 P2d 691

[629]

David L. Slansky, McMinnville, argued the cause for petitioner. With him on the briefs were Robert A. Payne and Oregon Legal Services Corporation, McMinnville.

Robert C. Cannon, Assistant Attorney General, Salem, argued the cause for respondent Employment Division. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem. No appearance for respondent Rocket Cafe.

Before Joseph, Presiding Judge, and Lee and Richardson, Judges.

JOSEPH, P.J.

**JOSEPH, P.J.**

This matter is before us on a petition for judicial review of a final order of the Employment Appeals Board (Board) under ORS 657.282 and ORS 183.482(1). The Board's decision adopted the referee's findings of fact and conclusions of law without making its own findings and conclusions, a practice sanctioned by *Skookum Co., Inc. v. Employment Division,* 276 Or 303, 554 P2d 520 (1976), and OAR 471-41-020(1)(d). The referee's order disqualified petitioner from benefits under ORS 657.176(2)(c) because she had voluntarily left work without good cause. The facts are sufficiently set out in the referee's findings.[1]

---

[1]

"(1)   Claimant worked for the employer from November 28, 1977 to April 16, 1979, first as a waitress and pie baker, and later additionally as assistant manager.

"(2)   On April 16, 1979, claimant left work because she felt the employer was unresponsive to her complaints about unsatisfactory food handling and unclean cooking and service facilities.

"(3)   Before leaving, claimant worked the first shift on Mondays through Fridays, 6:00 a.m. to 2:00 p.m.; and she was paid $3.00 an hour.

"(4)   The employer's second shift worked from 2:00 p.m. to 10:00 p.m.

"(5)   Claimant testified the employer's premises were generally unclean.

"(6)   At the end of their shift, the second-shift workers habitually failed to wash or empty some cooking fixtures and utensils and holding and serving dishes and facilities.

"(7)   At times, they failed to stock or properly to prepare some food items for the first shift, or to store some foods in the cooler over night.

"(8)   Consequently, the first-shift workers had to do washing and cleaning and some food preparation left undone by the second-shift workers and to cope with some spoiled food items and menu shortages.

"(9)   Almost daily, claimant complained to the employer about those conditions, and asked that they be corrected through better supervision over the second shift.

"(10)   At one time, claimant told the employer she would close the premises if such conditions were not remedied.

"(11)   At 6:00 a.m. on April 16, 1979 claimant and the cook opened the premises to waiting patrons.

Pursuant to *McPherson v. Employment Division*, 285 Or 541, 591 P2d 1381 (1979), and *Oliver v. Employment Division*, 40 Or App 487, 595 P2d 1252 (1979), OAR 471-30-038 was adopted to define certain terms used in ORS 657.176. It includes the following:

"(4) Good cause for voluntarily leaving work under ORS 657.176(2)(c) is such that a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work. The reason must be of such gravity that the individual has no reasonable alternative but to leave work."

In his conclusions the referee said:

"*** Claimant voluntarily left work without good cause. Under ORS 657.176, good cause for voluntarily leaving work is such cause as would compel a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, to leave work; such cause that the individual has no reasonable alternative but to leave work *and thereby enter the ranks of the unemployed.*" (Emphasis supplied.)

The italicised words are not derived from the statute or the rule. Petitioner's argument that the rule as stated by the referee means that "What counts is the employee's actual subjective intent" seizes upon the

"(12) They then found that some utensils, creamers, the kitchen stove and the kitchen itself in unclean condition.

"(13) They also found some boiled-off potatoes and sour hash browns had been left for their use that morning.

"(14) Without charge to the patrons, claimant served them coffee, but refused them food because of the conditions she found.

"(15) At 6:45 a.m. claimant locked the premises and left.

"(16) She then called the employer to report what she had done and why she did so.

"(17) Claimant made no further effort to contact the employer on April 16, 1979.

"(18) Therefore, the evening of April 16, 1979, the employer arranged a replacement for the claimant.

"(19) The morning of April 17, 1979, claimant returned to the employer's premises to return to work.

"(20) Finding no note from the employer or cash in the till, she called the employer and was told to surrender her keys to the restaurant."

referee's probably unintended expansion of the actual rule. His controlling conclusion, however, was:

> "*** Although claimant may have had good cause to continue to complain to the employer about the conditions she deplored, it was not reasonable for her to have walked off the job. She had other alternatives to leaving which she did not pursue."

Applying the rule as written, there was substantial evidence before the referee to support that conclusion. ORS 183.482(8)(d). The portion of the referee's conclusions relating to intent stemmed from an erroneous reading of the rule, but that did not prejudice the substantial rights of petitioner. ORS 183.482(8)(a).

In her submission to the Board, petitioner urged that the record made before the referee showed that the termination of her employment should be characterized as a "labor dispute" under ORS 657.200(1).[2] *See Skookum v. Employment Division, supra.* The issue had not been raised before the referee, and the Board made no findings or conclusions about it. Petitioner would have the matter remanded to the Board to do that.

The Board's decision said: "We find that the referee's decision is correct, proper and complete." Since the referee did not have the labor dispute issue before it, we infer that the Board either ignored the issue or determined that it did not have the authority to consider it in its review capacity. The scope of review by the Board is *de novo* on the evidential record made before the referee. *Stevenson v. Morgan,* 17 Or App 428, 431, 522 P2d 1204 (1974); ORS 657.275; ORS 657.280; *see* OAR 471-41-005 to 471-41-030. The facts purportedly showing the labor dispute were presented

---

[2] ORS 657.200(1):

"(1) An individual is disqualified for benefits for any week with respect to which the assistant director finds that his unemployment is due to a labor dispute which is in active progress at the factory, establishment or other premises at which he is or was last employed or at which he claims employment rights by union agreement or otherwise."

to the referee, and the issue was before the Board. It ought to have been decided. Under the *Skookum* case, *supra,* if there was a labor dispute, and if when the dispute ended the petitioner had no employment to return to because the employer had replaced her, she may have been entitled to unemployment benefits. Not to decide that matter was an error of substance.

The Unemployment Compensation Law does not define "labor dispute." Petitioner urges that we make the definition in this case judicially, as have several other states. Annotation, 63 ALR3d 88 (1975). The respondent Employment Division asserts that the definition in ORS 663.005(5)[3] should be applied (and, further, that we should conclude as a matter of law that under that definition there was no labor dispute). Given the remedial nature of the Unemployment Compensation Law, we believe that there may well be "value-judgment" policy decisions to be made with respect to the interplay between the purposes of the act and the more general aspects of labor-management relations in arriving at a definition. We decline, therefore, to accept either of the parties' urgings. On remand, it will be necessary for the Division to take the "first step" (*see Oliver v. Employment Division, supra,* 40 Or App at 493) of adopting an appropriate rule.

Remanded for further consideration.

---

[3] ORS 663.005(5):

"(5) 'Labor dispute' includes any controversy concerning terms, tenure or conditions of employment or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employe."