Argued and submitted May 4, 1984, reversed and remanded for reconsideration
February 6, reconsideration denied June 7, petition for review denied
July 23, 1985 (299 Or 522)

### CROPLEY et al,
*Petitioners,*

*v.*

### EMPLOYMENT DIVISION et al,
*Respondents.*

### (EAB-83-AB-1580; CA A29588)

694 P2d 1025

Mark B. Williams, Portland, argued the cause for petitioners. With him on the briefs were Terri K. Borchers, and Michael H. Marcus, Legal Aid Service, Portland.

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause for respondents Employment Division, Raymond P. Thorne, Assistant Director, Department of Human Resources. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

No appearance for respondent Northwest Marine Iron Works.

Before Buttler, Presiding Judge, and Warren and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

Buttler, P. J., dissenting.

## VAN HOOMISSEN, J.

Four claimants seek judicial review of an Employment Appeals Board order that held that they are not entitled to receive unemployment benefits because they were unemployed "due to a labor dispute." ORS 657.200(1); OAR 471-30-097.[1] We review to determine whether EAB's order is supported by substantial evidence. ORS 657.282; 183.482(7) and (8)(c). It is not. Therefore, we reverse and remand for reconsideration.

Claimants are members of Boilermakers Local 72. Northwest Marine Iron Works laid them off because of a lack of work. They expected to return to work as conditions improved and work became available. All were receiving unemployment benefits. The collective bargaining agreement between Northwest and Local 72 expired on April 1, 1983, while claimants were on lay-off status. On April 18, a strike began.

The 22 claimants in the companion cases, *Aldrich v. Employment Division,* 72 Or App 176, 694 P2d 1029 (1985), are members of Machinists Local 63, which also struck Northwest. Both Local 72 and Local 63 were affiliated with the Metal Trades Council, which sanctioned the strike. A consolidated hearing was held in June, 1983, at which the claimants here and those in *Aldrich* were present or represented.

On April 22, Northwest sent a letter to its striking and laid-off employes stating in relevant part:

"We want to resume operation with our existing employees, however, should you choose not to return to work by

---

[1] ORS 657.200(1) provides:

"An individual is disqualified for benefits for any week with respect to which the assistant director finds that his unemployment is due to a labor dispute which is in active progress at the factory, establishment or other premises at which he is or was last employed or at which he claims unemployment rights by union agreement or otherwise."

OAR 471-30-097 provides:

"The term 'labor dispute' as used in the Employment Division law means any concerted or deliberate action by two or more individuals or by an employing unit resulting in either a strike or lockout in which wages, hours, working conditions or terms of employment of the individuals are involved."

Wednesday, April 27, 1983, we will have no alternative but to hire *permanent* replacements." (Emphasis in original.)

None of the claimants here or in *Aldrich* reported to work. The referee concluded that they all were disqualified from receiving unemployment benefits under ORS 657.200(1).

On review, EAB made the following relevant findings:

"(7) Some of these claimants participated in the picketing. (8) The agreement which expired April 1, 1983, provided for a system of recalling laid off workers according to seniority. (9) That seniority provision was not an issue in the negotiations. (10) The employer honored this provision and utilized the seniority list in recalling the claimants. (11) On April 22, 1983, a letter was mailed to everyone on the seniority list (Exh. 3). (12) The letter requested the employees to return to work by April 27, 1983 so operations could be resumed. (13) All claimants declined to cross the picket line and accept jobs which had been vacated by the striking employees.[2] (14) The claimants had been receiving unemployment benefits during the period of their layoff. (15) At the time of the hearing, the labor dispute had not been resolved."

EAB concluded:

"Under a very nearly identical fact situation, the Oregon Court of Appeals found in *Barrier v. Employment Division,* 29 Or App 387[,] [392] (1977) * * * [:]

" 'The * * * inquiry is whether the petitioners' unemployment...is due to a labor dispute. In *Skookum Co., Inc. v. Employment Div.,* 24 Or App 271, 545 P2d 914, aff'd 276 Or 303, 554 P2d 520 (1976), we held the words "due to a labor dispute" meant caused by a labor dispute and it was not sufficient for disqualification if the unemployment merely occurred during the course of a strike.

---

[2]ORS 657.195 provides in relevant part:

"(1) Notwithstanding any other provisions of this chapter, no work is deemed suitable and benefits shall not be denied under this chapter to any otherwise eligible individual for refusing to accept new work under any of the following conditions:

"(a) If the position offered is vacant due directly to a strike, lockout or other labor dispute."

We do not understand what significance, if any, EAB attaches to its finding of fact #13. *See Campos v. California Employment Dev. Dept.,* 183 Cal Rptr 637, 132 Cal App 3d 961 (1982).

" '...Petitioners * * * argue the labor dispute was not the cause of the unemployment. They contend they were laid off and this layoff would have continued whether or not the strike was called. The causal relationship, the argument continues, is a "but for" relationship and an employe can be disqualified only if he would be working "but for" the strike. It is true the initial cause of the unemployment was a lack of work at the employer's plant and had the layoff continued during the strike their unemployment would not be due to a labor dispute. *However, when the strike began the employer recalled petitioners and the layoff was terminated. They could have been working but for their refusal to cross the picket line and report for work.* The petitioners are in no different position than if they had reported for work then immediately joined the strike and refused to work further. It follows that their unemployment... was caused by and therefore due to a labor dispute.' " (Emphasis supplied.)

There are two difficulties with EAB's opinion, neither of which is irremediable. First, the two emphasized sentences in the immediately preceding paragraph, while they appear in the "Conclusion and Reasons" section of EAB's opinion, are, in fact, findings of fact. This minor imprecision with respect to the *locus* of those findings would not deter us if they are supported by evidence in the record. They are, but only in part.

As presented to EAB, this case and *Aldrich* involved 26 claimants. As to all, EAB concluded:

"Here, as in *Barrier,* [all] claimants were recalled to fill the jobs vacated by the striking employees. They did not report to work because they declined to cross the picket line."

There is substantial evidence in the record to support a conclusion that *some* of the 26 claimants in both cases could have been working. However, we do not find substantial evidence in the record that *all* of them could have been working.

■ It is the policy of the state to remain neutral in labor disputes. *Scoggins/Yost/Strong v. Morgan,* 11 Or App 502, 512, 503 P2d 509 (1972). In *Skookum Co., Inc. v. Employment Division,* 24 Or App 271, 275, 545 P2d 914 (1976), *aff'd,* 276 Or 303, 554 P2d 520 (1976), we explained:

> "To fall under the sanction of ORS 657.200(1) the claimant's unemployment must be 'due to' the labor dispute. * * * [T]he words 'due to' mean 'caused by.' They do not mean merely 'occurring in the course of.' *The element of causation is indispensable.*" (Emphasis supplied.)

Unemployment compensation helps laid-off workers to subsist during unemployment. Whether benefits are awarded directly affects them. Whether laid-off workers receive unemployment benefits when their union is on strike directly affects the resolution of the strike.[3]

■    The four claimants here initially were laid off because of a lack of work. Before the strike, Northwest had work for

---

[3]

"The significance of an award of benefits to both the employer and the employe is greatly increased by the presence of a labor dispute between the parties. To a large degree, the success of a strike or lockout depends upon whether unemployment benefits will be available. During a strike, the receipt of benefits by even a small portion of striking workers lessens the economic incentive on the total workforce to compromise demands or end the strike. Similarly, a lockout affects workers less drastically when unemployment benefits are received. Employers also face greater pressure to accede to worker demands as the award of benefits causes insurance rates to increase.

"On the other hand, the denial of unemployment compensation to workers involved in a labor dispute helps the employer by hastening the depletion of workers' resources and union coffers. More significantly, if, under the threat of losing their benefits, unemployed workers can be forced to take the jobs of strikers, the success of the strike will be severely compromised.

"In sum, the award or denial of unemployment benefits during a labor dispute greatly affects the balance of power between employe and employer. In recognition of this effect, two types of statutes have been enacted at the state level. First, labor dispute disqualification provisions, adopted in all states, deny unemployment benefits to workers whose unemployment was caused by a labor dispute. [ORS 657.195]. The second type of statute, modeled after the struck-work provision of the Federal Unemployment Tax Act [26 USC § 3304(a)(5)(A) (1976)], prohibits the denial of unemployment benefits to workers because they refuse to accept 'struck work.' [26 USC §§ 3301-09 (1976)].

"Both the labor dispute disqualification provisions and the struck-work provisions are designed to maintain the status quo between workers and employers by determining eligibility for benefits as if there were no labor dispute. This statutory scheme reflects an underlying purpose to keep the allocation of unemployment benefits 'neutral' in labor disputes * * *.

"In most labor dispute situations, the statutory provisions are applied effectively to carry out this underlying purpose of neutrality. When workers have been laid off prior to a strike, however, the situation presents a difficult issue of statutory interpretation that has led to conflicting results." Comment, *Unemployment Benefits, Laid-Off Workers and Labor Disputes: The Unemployment Benefit Conflict,* 19 Will L Rev 737 (1983).

only two boilermakers. Claimants offered uncontested evidence that, before any of them received Northwest's letter, Northwest had hired two other boilermakers to replace its striking boilermakers. Before the strike, Northwest had twenty employes working at its production facility, the relevant workplace here. On the day of the hearing, fourteen employes were working there. A reasonable inference is that Northwest continued to lack work. Importantly, EAB made no specific finding that work was available to any individual claimant or that claimants' continued unemployment was caused solely by a labor dispute.

It follows that this case must be remanded to EAB for a determination whether any of the claimants could have worked but for an unprivileged decision not to cross the picket line. If any one could not have, he is entitled to benefits.[4]

Reversed and remanded for reconsideration.

**BUTTLER, P. J.,** dissenting.

This case and *Aldrich v. Employment Division,* 72 Or App 176, 694 P2d 1029 (1985), were consolidated for hearing before the referee, because they involve generally the same operative facts. I view the case the same as the dissenting member of EAB: none of the claimants involved in either of the two cases was "called back" to work; therefore they remained on lay-off status and did not become disqualified because of the strike.

The letter on which employer relies is quoted in relevant part in the majority opinion, 72 Or App at 95-96. That letter was sent to striking employes as well as to laid-off nonstriking employes. It advised them that the company wished to resume operations with its existing employes but

---

[4] Because the record indicates that there may be factual differences among the situations of the claimants here and those in *Aldrich,* EAB should make findings relevant to each claimant. For example, some claimants contend that they did not receive Northwest's letter or that they received it after replacements were hired; that they contacted Northwest and were told the letter did not apply to them or that there was no work available; that they were told that their supervisor would call them when work was available and that their supervisor did not call; that, at best, there was enough work available for only a few workers and that they should not be disqualified because other workers with more seniority would take those jobs; and that they were privileged to reject any work offered, because it was "struck work." We express no opinion on the labor contract's seniority provisions and their effect, if any, on the merits of individual claims.

that, if they did not chose to return to work by a certain date, the employer would hire *permanent* replacements. An employer has the right to do that when, as here, the strike is an economic one. That the letter was nothing more than a statement of the employer's position with respect to the labor dispute is evidenced by the undisputed fact that at least two of the laid-off claimants in *Aldrich* called in after receiving that letter, and each was advised that the letter did not apply to him. That letter was an effort to terminate the strike, not to call back laid-off workers.

Given that state of the record, there is no substantial evidence to support the finding that any of these claimants was called back to work, thereby terminating their status as laid-off employes entitled to unemployment compensation.

Accordingly, the issues addressed by the majority are irrelevant, and *Barrier v. Employment Division,* 29 Or App 387, 563 P2d 1230 (1977), is inapplicable. In *Barrier,* each of the petitioners was called by the employer and was offered a job vacated by a striking employe. All of the petitioners declined to cross the picket line; rather, they joined the picket line and received strike benefits from the union strike fund. 29 Or App at 389. Those facts are in marked contrast to those here.

Because the claimants in both of these cases were not called back to work, they remained on a laid-off status, and were not disqualified from unemployment benefits. Accordingly, I would reverse the decision of EAB and not remand for reconsideration in this case.