CLAIMANT MEMBERS OF BOILERMAKERS
LOCAL 72 et al,
*Petitioners,*

*v.*

EMPLOYMENT DIVISION,
*Respondent,*

*and*

DILLINGHAM SHIP REPAIR
COMPANY et al,
*Respondents.*

(84-AB-353; CA 31521 (Control))

MATTIX et al,
*Petitioners,*

*v.*

EMPLOYMENT DIVISION et al,
*Respondents.*

(84-AB-353; CA A31531)

LIESEGANG,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION et al,
*Respondents.*

(84-AB-589; CA A31563)
(Cases Consolidated)

699 P2d 203

James S. Coon, Portland, argued the cause for petitioners. With him on the brief were Samuel J. Imperati, and Welch, Bruun and Green, Portland.

Linda DeVries, Assistant Attorney General, Salem, argued the cause for respondent Employment Division. With her on the brief were Dave Frohmayer, Attorney General, and James E. Mountain, J., Solicitor General, Salem.

David H. Wilson, Jr., Portland, argued the cause for respondent Dillingham Ship Repair Company. With him on the brief were Amy Segel, and Bullard, Korshoj, Smith and Jernstedt, Portland.

Wayne D. Landsverk, Portland, waived appearance for respondent Northwest Marine Iron Works.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Petitioners are approximately 750 members of several metal crafts unions who were employed at Dillingham Ship Repair Company and Northwest Marine Iron Works. Those unions struck the companies, as part of a strike against all west coast shipyards, from July 26, 1983, through September 26, 1983. At the time the strike began, petitioners were on layoff status with the company; some had been laid off for several weeks, and some were laid off the day before the strike. Petitioners sought unemployment compensation benefits for the period of the strike, asserting that their unemployment was the result of a lack of work, not of the strike. Dillingham did not contest the claims for the period before August 10, 1983; EAB disqualified the Dillingham employe petitioners for the subsequent period. EAB found that Northwest Marine had work available through August 16, 1983, but that there was nothing in the record to show that it had work during the rest of the strike. EAB therefore denied compensation for the period before August 16 and granted it to the Northwest employes thereafter. We affirm as to the Dillingham employes and reverse and remand as to the Northwest Marine claimants.

We recently decided two cases involving similar issues. In *Cropley v. Employment Division,* 72 Or App 93, 694 P2d 1025 (1985), and *Aldrich v. Employment Division,* 72 Or App 176, 694 P2d 1029 (1985), workers had been laid off for lack of work before a strike began. During the strike, Northwest Marine, their employer, called them back, threatening to hire permanent replacements if they did not return. The workers did not return. EAB found that their unemployment was the result of a labor dispute.[1] We reversed and remanded, pointing out that it was clear from the record that Northwest

---

[1] ORS 657.200(1) provides:

"An individual is disqualified for benefits for any week with respect to which the assistant director finds that his unemployment is due to a labor dispute which is in active progress at the factory, establishment or other premises at which he is or was last employed or at which he claims employment rights by union agreement or otherwise."

The parties agree that there was an active strike at Dillingham and Northwest Marine and that petitioners claim employment rights at those employers by union agreement or otherwise. The only issue is whether petitioners' unemployment was a result of the strike or of a lack of work.

Marine did not have sufficient work available to employ all the workers, that it had already hired some replacements and that, therefore, at least some of the workers would have been unemployed whether or not there was a strike. We remanded the cases to EAB with instructions to award benefits to all claimants except those who could have worked but for an unprivileged decision not to cross the picket lines. *See Wood v. Morgan,* 17 Or App 579, 523 P2d 572 (1974).

As far as we or the EAB could tell from the records in *Cropley* and *Aldrich,* the lack of work in those cases was the result of a slowing of the general economy or of some other factor, not the strike. Here, Dillingham presented extensive evidence to show that, for the weeks in issue, the strike was the only reason that it had no work and that, if there had been no strike, it would have employed all of the workers on its seniority list.[2] EAB found:

> "(20) Dillingham anticipated normal operations prior to the commencement of the strike by reason of contracts let, bids out and anticipated 'drop in' work. (21) During the course of the strike, Dillingham received 15 or more requests to perform work. (22) The work could not be performed because of the strike."

■■ EAB's findings are supported by testimony detailing the ships which were committed or likely to come to Dillingham for repairs during the period of the strike, with the number of days each ship would be undergoing repair and the number of employes each would need, and by other testimony showing the likelihood of short term unscheduled ("drop in") work. Dillingham anticipated a ship requiring 250 employes a day beginning on August 10, 1983, and another requiring an additional 250 employes a day beginning August 20. Those 500 employes would have exhausted the entire Dillingham seniority list. Although there were only 250 firm jobs between August 10 and August 20, Dillingham also presented evidence that there would probably have been sufficient unscheduled work during that period to employ the remaining seniority list employes. EAB accepted that evidence, and we cannot substitute our evaluation of the evidence for EAB's. ORS

---

[2] Each company maintained a seniority list consisting of all employes who had worked a minimum number of hours for it in the previous six months. Employes on the seniority list were entitled to be called back before the companies could hire others in the same craft. All petitioners were on their respective employer's seniority list.

183.482(8)(c). Because there would have been sufficient work to employ all the Dillingham claimants, we affirm EAB's decision as to them.

Concerning Northwest Marine, EAB found:

"(18) Northwest Marine had two ships in the yard which left before repairs were completed and immediately before the strike commenced. (19) It was anticipated that repairs on these two ships would have been completed by August 16, 1983."

These findings are not supported by substantial evidence. Northwest Marine has not presented any evidence or participated in this case at any level. The only evidence to which the division points to support EAB's findings is an exhibit, D-6, which was admitted only to show the basis for the administrative decision, not to prove the truth of the matter contained in it. It cannot, therefore, be evidence in support of EAB's findings.

Even if there were substantial evidence in the record that Northwest Marine would have had work on these two ships, there is no evidence showing how many or which employes would have worked on them. It is clear that those two ships did not provide enough work for Northwest Marine's entire seniority list. On remand, EAB must first determine whether there is any evidence in the record that Northwest Marine would have had any work during the relevant period if there had been no strike. If EAB discovers such evidence, and if it accepts that evidence as persuasive and finds in accordance with it, it must then determine which petitioners would have been employed. EAB must award benefits to each worker, unless it is affirmatively able to find from the record that the worker would have worked but for the strike. *See Cropley v. Employment Division, supra.*[3]

Cases A31521 and A31531 affirmed in part; reversed and remanded for reconsideration with respect to the Northwest Marine Iron Works claimants. Case A31563 reversed and remanded for reconsideration.

---

[3] Our decision also resolves all the individual circumstances petitioners bring to our attention except that of Carl Liesegang. It appears that Liesegang may have been inadvertently omitted from the referee's decision and from EAB's order on appeal, because he may have been placed on the wrong list. On remand, EAB should reconsider his claim.