Argued and submitted November 22, 1985, affirmed January 29, 1986

FOY MARTIN SHEET METAL,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION et al,
*Respondents.*

(84-AB-1703; CA A34668)

713 P2d 662

Trent T. Whitford, Cascade Employers Association, Inc., Salem, argued the cause and filed the brief for petitioner.

Linda DeVries Grimms, Assistant Attorney General, Salem, argued the cause for respondent Employment Division. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

No appearance by respondents Clark A. Lynch and Anthony M. Sabbato.

Before Richardson, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

**WARREN, J.**

Employer seeks review of a decision of the Employment Appeals Board which held that claimants qualified for unemployment benefits. Two claimants' benefits are in issue. Employer contends that both claimants are disqualified by ORS 657.200 for participating in an active labor dispute and that claimant Lynch is also disqualified for refusing an offer of suitable employment.

Claimants were members of the Sheet Metal Workers' Union, Local 332. Employer had a labor agreement with the union, which expired June 30, 1983. Negotiations between the union and employer failed to produce a new agreement, and on August 1, 1983, employer declared its final offer to be effective August 15, 1983. The union rejected the offer, and no employes showed up for work on August 15. Union members picketed employer's place of business for no longer than two weeks at the end of August. Claimants did not picket.

Claimants were declared to be disqualified for unemployment benefits under ORS 657.200(1) from August 15, 1983, because their unemployment was due to a labor dispute in active progress. ORS 657.200(1) provides:

> "An individual is disqualified for benefits for any week with respect to which the assistant director finds that the unemployment of the individual is due to a labor dispute which is in active progress at the factory, establishment or other premises at which the individual is or was last employed or at which the individual claims employment rights by union agreement or otherwise."

Claimants do not dispute their disqualification as of August 15. The issue is whether and when their disqualification terminated.

On December 6, 1983, Local 332 voted to disclaim any and all interest in representing current employes of this employer. The local advised employer by letter dated January 16, 1984, that its members had voted on December 6, 1983, to terminate any labor dispute with employer and that the local had terminated its strike as of December 6, 1983. Employer received the letter on January 17, 1984.

■ EAB held that there was no labor dispute in active progress and that claimants were no longer disqualified under

ORS 657.200(1) after the union members voted to disclaim representation and informed employer by letter of January 16, 1984, that the union had terminated any labor dispute with employer. We agree with EAB on this point. OAR 471-30-097 defines "labor dispute" as

" * * * any concerted or deliberate action by two or more individuals or by an employing unit resulting in either a strike or lockout in which wages, hours, working conditions or terms of employment of the individuals are involved."

As of January 16, 1984, the active phase of the labor dispute had ended. Employer had won its battle with the union, and it set up a non-union shop.[1]

■        Employer argues that, once claimants were disqualified from benefits by ORS 657.200(1), they had to take affirmative steps to re-qualify for benefits. It argues that ORS 657.200(3) supports its contention. The statute provides:

"[ORS 657.200(1)] does not apply if it is shown to the satisfaction of the assistant director that the individual:

"(a)   Is not participating in or financing or directly interested in the labor dispute which caused the unemployment of the individual; and

"(b)   Does not belong to a grade or class of workers of which, immediately before the commencement of the labor dispute, there were members employed at the premises at which the labor dispute occurs, any of whom are participating in or financing or directly interested in the dispute."

ORS 657.200(3) does not apply, because it deals only with a claimant's qualification for benefits *despite* the disqualification of subsection (1), *i.e.*, when a labor dispute is in existence. That was the situation in *Barrier v. Employment Division,* 29 Or App 387, 563 P2d 1230 (1977), also relied upon by employer. It is inapposite. Once a labor dispute is no longer in active progress, a claimant is not disqualified by ORS 657.200(1), and there is no occasion for ORS 657.200(3) to come into play.

*Colee v. Employment Div.,* 25 Or App 39, 548 P2d 167

---

[1] Claimants do not take issue with EAB's conclusion that the labor dispute did not end until employer was notified of the union's vote.

(1976), does not support employer's position. There the claimants' collective bargaining agent had voted to end the strike on June 6 and had so notified the employer on June 9. Picketing continued until June 23. We held that the claimants were disqualified by ORS 657.200(1) from benefits for the period during which picketing continued, because they had not abandoned the strike and affirmatively sought re-employment. *Colee* does not apply to this case, because the picketing here had ceased long before the union voted to terminate the strike.

The preceding discussion resolves both claimants' alleged disqualification under ORS 657.200. Employer's remaining assignments of error contest EAB's conclusion that claimant Lynch is not disqualified from benefits by ORS 657.176(2)(e), which provides:

> "An individual shall be disqualified from the receipt of benefits * * * if the authorized representative designated by the assistant director finds that the individual:
>
> "* * * * *
>
> "(e)   Failed without good cause to accept suitable work when offered."

■   On January 19, 1984, after it had learned that the union had terminated the strike, employer offered Lynch employment. The offer was for a lower wage than he had earned under the union contract and eliminated many other benefits which Lynch had received. At the time, Lynch still belonged to the union and wished to remain a member in good standing. He was aware that the union could impose sanctions, including fines and expulsion, if a member accepted work with an employer who did not have a labor agreement with the union. Lynch refused the offer. EAB concluded that the offer was not of "suitable work"[2] and that Lynch had

---

[2] EAB relied on ORS 657.195(1)(c) to conclude that the offer was not of "suitable work." ORS 657.195(1)(c) provides an exception to what may be considered suitable work:

"Notwithstanding any other provisions of this chapter, no work is deemed suitable and benefits shall not be denied under this chapter to any otherwise eligible individual for refusing to accept new work under any of the following conditions:

"good cause" to refuse the offer, so that ORS 657.176(2)(e) did not disqualify him from benefits.

We agree that Lynch had "good cause" to refuse the job offer. OAR 471-30-038(6) defines "good cause" as a reason

"* * * such that a reasonable and prudent person, exercising ordinary common sense, would refuse to apply for available suitable work when referred by the employment office or accept suitable work when offered by the employer. In determining disqualification under this section, consideration shall be given to suitable work factors and exceptions as set forth in ORS 657.190 and 657.195."

If Lynch had accepted the job, he could be subject to sanctions and expulsion by the union. He would also receive significantly less compensation, in terms of wages and benefits, for performing the same work as he had under the collective bargaining agreement. These facts support EAB's conclusion that Lynch refused an offer of work with good cause. He was not disqualified from benefits by ORS 657.176.

Affirmed.

---

"* * * * *

"(c) If as a condition of being employed the individual would be required to join a company union or to resign from or refrain from joining any bona fide labor organization."

Employer did not specifically require that Lynch resign from the union as a condition of employment, but the EAB held that that would have been the practical effect of accepting employment. It is true that, if he had accepted the job, he could face potentially heavy fines and expulsion from the union. He could not remain a member in good standing if he accepted the offer; however, we do not think that Lynch would be required to resign from the union "as a *condition* of being employed." Moreover, the offer was not one of "new work" within ORS 657.195(1), because Lynch was offered his old position. *Barrier v. Employment Division, supra,* 29 Or App at 394.