Argued and submitted July 8, 1985, affirmed April 16, 1986

ADAMS et al,
*Petitioners,*

*v.*

EMPLOYMENT DIVISION et al,
*Respondents.*

(84-AB-1066; CA A32890)

717 P2d 1199

James S. Coon, Portland, argued the cause for petitioners. With him on the brief were Samuel J. Imperati and Aitchison, Imperati, Paull, Barnett & Sherwood, P.C., Portland.

Linda J. DeVries, Assistant Attorney General, Salem, argued the cause for respondent Employment Division. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Wayne D. Landsverk, Portland, argued the cause and filed the brief for respondent Oregon Steel Mills.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

Claimants seek review of a decision of the Employment Appeals Board which affirmed the referee's decision upholding administrative denials of unemployment compensation benefits. The case arises out of a labor dispute at employer's plant, during which employer permanently replaced claimants. We affirm.

Claimants were members of Steelworkers Union Locals 3010 and 6380. Some of them were scheduled to work on September 9, others on September 12, 1983. The strike began at 11:00 p.m., September 9, 1983, and remained in progress through the date of the hearing. Claimants refused to cross the picket line. Employer began hiring permanent replacements for workers who were on strike in October, 1983. It also reduced its work force by 20 percent. Although the record does not indicate just how many openings employer had at the time of the hearing, it had no work for most of the claimants.

Claimants filed for unemployment benefits and were issued administrative denials. Most claimants requested hearings within 20 days of the denials. Seven claimants filed late and, as to three others, administrative denials had not yet issued at the time of the hearing. The referee concluded that all claimants were disqualified from receiving unemployment benefits by ORS 657.200(1):

> "An individual is disqualified for benefits for any week with respect to which the assistant director finds that the unemployment of the individual is due to a labor dispute which is in active progress at the factory, establishment or other premises at which the individual is or was last employed or at which the individual claims employment rights by union agreement or otherwise."

EAB adopted the referee's conclusions and reasoning with respect to claimants who had filed their hearing requests on time. It held that the referee lacked jurisdiction to consider the claims of the ten who had either filed late or as to whom administrative denials had not issued.

■ Claimants first assign as error EAB's adoption of the referee's decision disqualifying claimants who had filed their hearing requests on time. They argue that ORS 657.200(1)

does not apply after an individual has been permanently replaced. They rely on language from our decision in *Skookum Co. Inc. v. Employment Div.*, 24 Or App 271, 274, 545 P2d 914, *aff'd* 276 Or 303, 554 P2d 520 (1976):

> "We hold that the 'labor dispute' disqualification does not apply where the claimant employes have been permanently replaced."

That statement, however, does not precisely capture the proposition for which the decision stands. In *Skookum,* the claimants tried to return to work before the labor dispute was finally settled, and the employer turned them away.[1] *Skookum* holds only that unemployment is no longer "due to a labor dispute" for purposes of ORS 657.200(1) after the employer rejects a genuine offer from the strikers to return to work. It is not central to the reasoning in *Skookum* that the employer rejected the offer because it had permanently replaced the strikers.

Indeed, *Skookum* makes clear that permanent replacement is irrelevant during the active pendency of the labor dispute. The employer in *Skookum* began to hire replacement personnel on September 3, 1974, but the strikers did not offer to return to work and end the strike until December 2, 1974. The Supreme Court found that there was "substantial evidence in support of the referee's and the Appeals Board's conclusion that as of December 2, 1974, when they attempted to return to work, the claimants' continued unemployment was no longer 'due to a labor dispute' * * *." 276 Or at 308. There was no question as to the claimants' disqualification in the three months between September 3 and December 2.

We think *Colee v. Employment Div.*, 25 Or App 39, 548 P2d 167 (1976), is more apposite. There, the claimants

---

[1] The Supreme Court's opinion puts more emphasis on the necessity of attempting to return to work:

"[A]lthough it may be true, as Skookum contends, that there was no *final* agreement reached as of December 2, 1974, it does not necessarily follow that the labor dispute continued to be the effective cause of claimants' unemployment after they again reported for work. In our view, the fact that no final agreement had yet been reached does not *automatically* preclude a finding that, following a bona fide attempt to return to work, the claimants' continued unemployment was due to another cause—such as the fact that their employer no longer had any work available for them." 276 Or at 308-309. (Emphasis in original.)

went on strike on May 9, 1975, and the employer permanently replaced them within ten days. Picketing continued, however, until June 23, 1975. We found substantial evidence to support EAB's determination that the claimants' unemployment was due to the labor dispute. We said:

"To qualify for unemployment compensation while picketing continues, a claimant who has been permanently replaced must further show that: (1) he has unilaterally abandoned the strike and (2) he has affirmatively sought reemployment. None of the present claimants qualify [*sic*] under that standard." 25 Or App at 43.

Claimants argue that *Cropley v. Employment Division,* 72 Or App 93, 694 P2d 1025 (1985), requires EAB to determine whether any of the claimants would have been working "but for an unprivileged decision not to cross the picket line" during a strike. 72 Or App at 99; *See also Claimant Members of Boilermakers v. Emp. Div.,* 73 Or App 470, 699 P2d 203 (1985). Therefore, they argue, it is a necessary precondition to the application of ORS 657.200(1) that a claimant's job be open and awaiting his or her return.

We disagree. In *Cropley* it was never clear that claimants had, at any point, become unemployed as a result of a labor dispute. They were originally unemployed because of a layoff, and it was a question of fact whether the employer's call for their return to work at the commencement of the strike was genuine. Similarly, in *Claimant Members of Boilermakers v. Emp. Div., supra,* the claimants were laid off before the strike began; lack of work was unquestionably the original cause of their unemployment. In other words, the question in *Cropley* and *Claimant Members* was not whether the claimants could requalify for benefits by proving that they had been permanently replaced but whether they had ever been disqualified because of a strike in the first place.

Here, to the contrary, it is undisputed that claimants were originally unemployed because of the labor dispute. That is sufficient to disqualify them under ORS 657.200(1). They could have requalified for benefits under 657.200(3)[2] by

---

[2] ORS 657.200(3) provides:

"This section does not apply if it is shown to the satisfaction of the assistant

demonstrating that neither they nor any members of the grade or class of workers of which they were members were financing or participating in or directly interested in the strike. Only if claimants had requalified under ORS 657.200(3) would it be proper to consider whether they had met the rest of the eligibility requirements of ORS chapter 657, including the requirements in ORS 657.155 and 657.176(2). *See Cameron et al v. DeBoard; MacInnes et al,* 230 Or 411, 415-16, 370 P2d 709 (1962). The referee and EAB correctly held that claimants who had timely filed for benefits are disqualified by ORS 657.200(1) from receiving unemployment benefits during the labor dispute.

■    Claimants' second assignment of error is that EAB incorrectly held that the referee lacked jurisdiction over the claimants who had filed late or as to whom denials had not issued. EAB was correct.

Affirmed.

---

director that the individual:

"(a) Is not participating in or financing or directly interested in the labor dispute which caused the unemployment of the individual; and

"(b) Does not belong to a grade or class of workers of which, immediately before the commencement of the labor dispute, there were members employed at the premises at which the labor dispute occurs, any of whom are participating in or financing or directly interested in the dispute."