Argued and submitted May 19, reversed and remanded for reconsideration
June 28, 1995

## Richard TILDEN, D.C.,
*Petitioner,*

*v.*

## BOARD OF CHIROPRACTIC EXAMINERS,
*Respondent.*

(93-CEB-005; CA A85230)

898 P2d 219

Gene L. Platt argued the cause for petitioner. With him on the brief was Cummins, Brown, Goodman, Fish & Peterson, P.C.

John T. Bagg, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

Petitioner seeks review of a final order of the Board of Chiropractic Examiners (Board), in which it found that he had violated recognized standards of care for chiropractic physicians and fined him $3,000. ORS 684.100(1). We reverse and remand.

Petitioner is a licensed chiropractic physician in Oregon. As part of his practice, he works for Western Medical Consultants and participates in medical examinations (IMEs) of claimants who are receiving treatment covered by workers' compensation insurance. At Western Medical Consultants, an IME is conducted by a team of physicians, whose fields of practice may vary, with one doctor taking the lead in performing the examination. Before the physical examination of a claimant, the physicians review the documents in the claimant's file and ask the patient questions. During the physical examination by the lead doctor, the other physicians will observe and sometimes participate in the examination. Afterwards, they confer, reach a consensus of opinion, and all sign the report of their evaluation.

On April 2, 1991, petitioner participated in an IME of James Kahn with Dr. Snodgrass, a neurologist, and Dr. Bald, an orthopedic surgeon. Snodgrass performed the examination, and petitioner and Bald observed. At the time of the examination, they knew that Kahn had suffered a compensable injury to his back, had received chiropractic treatment from Dr. Freeman and had been referred eventually to a neurologist who performed a laminectomy in early 1990 and a lumbar laminectomy/decompression in September 1990. After the latter surgery, the neurologist recommended that Kahn continue chiropractic treatment without manipulation, and that Freeman provide that treatment. In January 1991, the neurologist recommended that Kahn undergo an IME.

On April 2, the IME examiners did not have any x-rays of Kahn, but they did have reports from the radiologist for the neurologist. Although they had x-ray equipment at their facility, they did not order updated x-rays. Petitioner observed Snodgrass perform the physical examination, which included static palpation, but he did not perform any tests on

Kahn personally. After the examination, Snodgrass wrote a report to Kahn's employer's insurer, in which petitioner and Bald concurred, stating that the chiropractic treatments were not assisting Kahn in becoming more active, and that the treatments were merely palliative. They also recommended that the treatments be discontinued.

Freeman filed a complaint with the Board, accusing petitioner of making recommendations for the benefit of the insurer regardless of the condition of the patient. The Board referred this matter to a Peer Review Investigation Committee, which investigated and subsequently recommended sanctions against petitioner. The Board then issued a notice of sanction, which stated, in part:

"2.

"On April 2, 1991, [petitioner] observed and concurred in an independent medical examination of patient James Kahn. In fact, an incomplete chiropractic examination of Kahn was performed by [petitioner] and Kahn's prior radiographs were not reviewed by [petitioner], although Kahn's history included two disc herniations, two back surgeries and sacralization of the fifth lumbar vertebra.

"3.

"The conduct described in paragraph 2 constitutes violations of ORS 684.100(1)(g)(B)[1] and OAR 811-35-005(11)[2]

---

[1] ORS 684.100(1) provides, in part:

"The board may refuse to grant a license to any applicant or may discipline a person upon any of the following grounds:

"* * * * *

"(g) Unprofessional or dishonorable conduct which includes but is not limited to:

"* * * * *

"(B) Willful ordering or performance of unnecessary laboratory tests or studies; administration of unnecessary treatment; failure to obtain consultations or perform referrals when failing to do so is not consistent with the standard of care; or otherwise ordering or performing any chiropractic service, X-ray, or treatment which is contrary to recognized standards of practice of the chiropractic profession."

[2] OAR 811-35-005(11) provides:

"The Chiropractic Physician recognizes that the patient's condition treated must be a recognized one and that examination, tests, therapeutic substances, and treatment procedures used must be based on scientific studies and principles which are generally accepted by the profession as being needed, essential, and appropriate to properly diagnose and treat patients with the particular

in that [petitioner] failed to perform or witness an examination which conformed to the recognized standards of practice of the chiropractic profession to properly diagnose a patient with Kahn's particular history and conditions.

"4.

"Further, in violation of ORS 684.100(1)(g)(B), [petitioner] failed to review pertinent radiographs which indicated sacralization of the fifth lumbar vertebra, prior to giving recommendations included as a part of [petitioner's] conclusion as an independent medical examiner."

Petitioner requested a hearing before the Board. At the hearing, several chiropractors testified as to whether petitioner had conformed to the recognized standards of chiropractic practice in his examination of Kahn. After the hearing, the hearings officer concluded in a proposed order that petitioner had not violated ORS 684.100(1)(g)(B) or OAR 811-35-005(11). In its final order, the Board adopted the hearings officer's findings, with some exceptions, but ruled that petitioner had violated ORS 684.100(1)(g)(B) and OAR 811-35-005(11).

■ We first address petitioner's argument that the Board's conclusion that he violated the accepted standard of care is not supported by substantial evidence. ORS 183.482(8).[3]

In its conclusions of law, the Board said:

"It is contended that [petitioner] needed to both examine X-rays and to perform motion palpation on the patient in order to have been operating within the standards of the profession. Many experts testified at the hearing.

"The peer review panel was unanimous in their opinion. The other expert witnesses disagreed. The licensee contends

---

condition. Thus, the quality and quantity of examination and therapeutic procedures must be within the norms and/or criteria established by the profession as a whole for such a condition. A chiropractic physician has the obligation to prepare a history, to perform a proper examination, arrive at a diagnosis, prognosis, and a report of findings."

[3] ORS 183.482(8)(c) provides:

"The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

that even a medical doctor believed the conduct was appropriate. The opinion of a medical doctor about what is appropriate to meet chiropractic standards is not persuasive. *However, there was ample testimony from persons within the chiropractic profession to indicate that reasonable chiropractors can differ as to whether [petitioner] needed to have X-rays or lay hands on the 'patient.'*

"* * * * *

"[Petitioner] had access to all of the reports prepared by radiologists and neurologists. In this case, however, some diagnostic imaging was necessary. [Petitioner] did not have access to, nor did he request diagnostic imaging or diagnostic imaging reports germane to the patient's current condition following his last surgery. Additionally, intersegmental motion of the spine and pelvis should have been assessed. *It is not necessary to X-ray a patient at every IME or at every examination.*

"*Reasonable persons can differ as to what tests are necessary for an examination.* However, there is evidence in this case that the licensee's conduct was outside the acceptable range of care." (Emphasis supplied.)

When reviewing for substantial evidence in the record, this court does not substitute its judgment as to what inferences should be drawn from the evidence;[4] however, we do review for whether an agency has expressed in its opinion a rational relationship between its findings and its conclusion.[5] In *City of Roseburg v. Roseburg City Firefighters*, 292 Or 266, 639 P2d 90 (1981), the court considered whether an agency had rational bases for the inferences it had drawn from certain facts. It said:

---

[4] ORS 183.482(7) provides, in part:

"[T]he court shall not substitute its judgment for that of the agency as to any issue of fact or agency discretion."

[5] ORS 183.470(2) provides:

"A final order shall be accompanied by findings of fact and conclusions of law. The findings of fact shall consist of a concise statement of the underlying facts supporting the findings as to each contested issue of fact and as to each ultimate fact required to support the agency's order."

*See Reynolds School District No. 7 v. Martin*, 30 Or App 39, 43-44, 566 P2d 196 (1977) ("In order that we may fulfill our function of review, we have construed ORS 183.470 to require * * * the rational relationship between the facts and conclusions.").

"[I]n cases involving expertise, [when] the reasoning is not obvious * * *, we will not assume the existence of a rationale. Rather, we look to the order to state the rational basis for the agency's inference. The explanation need not be complex, but it should be sufficient to demonstrate the existence of a rational basis and to allow for judicial review." 292 Or at 272.

In this case, the Board's rationale for its conclusion that petitioner should have performed diagnostic imaging or assessed the intersegmental motion of Kahn's spine and pelvis is unclear. The medical testimony at the hearing focused on whether petitioner's failure to examine x-rays or perform a test to assess the biomechanical status of the spine was a failure to perform a chiropractic examination within the acceptable range of care. The Board found that reasonable chiropractors could differ about the necessity to perform motion palpation or to have x-rays taken of Kahn. If reasonable chiropractors could differ, then the failure to perform the procedures is not necessarily evidence that petitioner acted outside an acceptable range of care. Nevertheless, the Board concluded that petitioner should have performed diagnostic imaging (x-ray) or looked at diagnostic imaging reports. Moreover, it asserts that he should have assessed Kahn's intersegmental motion. It is incumbent on the Board to explain why the failure to perform these procedures in Kahn's examination was unreasonable, when reasonable chiropractors could differ as to whether they were necessary.

Without an adequate explanation by the Board as to its reasoning, we conclude that a meaningful review under ORS 183.482(8) is impossible. *Stalder v. Bd. of Medical Examiners*, 37 Or App 853, 859, 588 P2d 659 (1978). Accordingly, we do not reach petitioner's other assignments of error.

Reversed and remanded for reconsideration.