Argued and submitted September 30, 1996, reversed and remanded
January 29, 1997

Pavel CRET,
Steven Lee and Paul Marckx,
*Petitioners,*

*v.*

EMPLOYMENT DEPARTMENT
and Fred Meyer, Inc.,
*Respondents.*
(95-AB-1145; CA A89589 (Control))

Michael ADAMS
and those listed on Attachment A
of the Employment Appeals Board order,
*Petitioners,*

*v.*

EMPLOYMENT DEPARTMENT
and Fred Meyer, Inc.,
*Respondents.*
(95-AB-1844; CA A90588)

932 P2d 560

Kimberly Chaput argued the cause and filed the brief for petitioners.

Richard D. Wasserman, Assistant Attorney General, argued the cause for respondent Employment Department. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

David H. Wilson argued the cause for respondent Fred Meyer, Inc. With him on the brief was Bullard, Korshoj, Smith & Jernstedt.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

This is a consolidated judicial review of two matters in which the Employment Appeals Board (Board) determined that claimants[1] were not entitled to unemployment compensation benefits. The Board held that, under ORS 657.200, claimants were disqualified from receiving benefits for those periods during which they did not work because of a labor dispute. We conclude, *inter alia*, that: (1) claimants' refusal to perform "struck work" did not constitute "participat[ion] * * * in a labor dispute" within the meaning of ORS 657.200(3)(b); and (2) participation in the labor dispute by other members of claimants' bargaining unit precluded claimants from recovering benefits after the date of that participation but did not retroactively divest claimants of any entitlement to benefits before that participation. Accordingly, we reverse and remand for additional Board review in both cases.

This dispute arises from the 1994 Portland grocery workers' strike. Claimants are 77 bakery workers who were employed at respondent Fred Meyer, Inc.'s central bakery facility in August 1994. Each claimant was a member of the Bakers' Union, Local 114. Members of another union, the Teamsters, would transport the baked goods from the central bakery to Fred Meyer's other facilities and stores in the Portland metropolitan area.

On August 18, 1994, several unions, including the Teamsters and the United Food and Commercial Workers Union, but not including Local 114, began a strike against Fred Meyer and other grocery concerns in the Portland area. On the same day, Local 114 gave Fred Meyer notice that it would honor the Teamsters' primary picket lines at the central bakery, effective August 21, 1994. On August 19, 1994, Fred Meyer decided to shut down the central bakery, because it would be unable to transport bakery items to its stores. Accordingly, on August 19, Fred Meyer notified claimants that they were laid off.

---

[1] Unless otherwise specified, when we refer to claimants in this opinion we mean the claimants in both cases.

At the same time Fred Meyer issued the lay-off notice, it offered claimants nonbakery work at its warehouse. That work was "struck work"—*i.e.*, work that had previously been performed by members of the striking unions. All of the claimants refused to perform the proffered warehouse work.

On September 4, 1994, Fred Meyer reopened the central bakery for limited production and began calling back various bakery workers. Between September 4 and November 12, 1994, when the strike ended, some, but not all, of the claimants returned to work. All of the claimants whom Fred Meyer asked to return to work did so. However, on or about October 17, 1994,[2] three members of Local 114, who are not among the 77 claimants, refused to cross the Teamsters' primary picket line and return to work.

From the beginning of the strike, claimants individually filed claims for unemployment compensation benefits, and, by October 10, the Employment Department had granted each claimant benefits. ORS 657.155; ORS 657.267. Fred Meyer sought hearings on the Department's decisions, ORS 657.266(5), and the Department sent notices to claimants that a hearing would be held on November 29, 1994. Ultimately, the claims of 74 of the 77 claimants (all but Cret, Lee, and Marckx) were litigated on November 29.[3] Claimants Cret, Lee, and Marckx, who did not receive notice of the November 29 hearing, were allowed a separate hearing on March 15, 1995.[4] The November 29 proceeding was a full evidentiary hearing, which encompassed presentation of testimony and exhibits. At the March 15, 1995, hearing, the parties, at the direction of the ALJ, who had also presided at the November 29 hearing, stipulated that the record would include the transcript of the November 29 hearing, the exhibits admitted at that hearing, and the ALJ's decision from that

---

[2] The Department points out that uncontradicted evidence indicates that three bakery workers refused the bakery work on October 17, 1994. However, neither the administrative law judge (ALJ) nor the Board made any finding as to when their refusal occurred.

[3] The Board's ultimate disposition of those 74 claimants' claims is the subject of one of the two matters consolidated on this appeal, CA A90588.

[4] The Board's ultimate disposition of those three claimants' claims is the subject of the second of the consolidated matters, CA A89589.

hearing. The Department appeared through an authorized representative at both hearings.

Both administrative hearings focused on the applicability of ORS 657.200. That statute provides, in part:

"(1) An individual is disqualified for benefits for any week with respect to which the Director of the Employment Department finds that the unemployment of the individual is due to a labor dispute which is in active progress at the factory, establishment or other premises at which the individual is or was last employed or at which the individual claims employment rights by union agreement or otherwise.

"(2) When an employer operates two or more premises in the conduct of business they shall be considered one premises for the purposes of this chapter if the labor dispute at one makes it impossible or impractical to conduct work at the others or in a normal manner.

"(3) This section does not apply if it is shown to the satisfaction of the director that the individual:

"* * * * *

"(b) Is not participating in or financing or directly interested in the labor dispute which caused the unemployment of the individual; and

"(c) Does not belong to a grade or class of workers of which, immediately before the commencement of the labor dispute, there were members employed at the premises at which the labor dispute occurs, any of whom are participating in or financing or directly interested in the dispute."

At both hearings, the parties agreed that claimants' unemployment was "due to a labor dispute," within the meaning of ORS 657.200(1). However, claimants contended that they "requalified" for benefits, as provided in ORS 657.200(3)(a)-(c), because they neither participated in the labor dispute nor belonged to a class of persons who had engaged in such participation. Fred Meyer disagreed, arguing, *inter alia*, that claimants had participated in the labor dispute between Fred Meyer and the striking union by refusing to perform the "struck work" at its warehouse.[5]

_____

[5] Fred Meyer did not argue that the three nonclaimant bakery workers' refusal to cross the central bakery picket line and to return to their regular work on or

The ALJ concluded in both proceedings that claimants were entitled to benefits. In particular, he decided that claimants' refusal to perform the struck warehouse work did not preclude them from "requalifying" for benefits under ORS 657.200(3):

> "The employer argues that it offered continued employment to the claimants in the form of work at the warehouse. ORS 657.195 provides in part, 'benefits shall not be denied under this chapter and ORS chapter 657A to any otherwise eligible individual for refusing to accept new work under any of the following conditions: (a) if the position offered is vacant due directly to a strike, lockout, or other labor dispute.'

> "The positions offered to the claimants were new (i.e., not their regular jobs) and were vacant because of the ongoing labor dispute. The Employment Department cannot deny claimant benefits for refusing this work. For these reasons, ORS 657.200 does not [disqualify claimants from entitlement to benefits]."

Fred Meyer appealed, and the Board reversed in both cases. In reversing, the Board did not explicitly address the "struck work" issue that was central to the ALJ's decision. Instead, the Board *sua sponte* considered and decided an issue that the employer had not raised, and that the ALJ had not decided: Did the three nonclaimant bakery workers' refusal to cross the Teamsters' picket line and return to work at the central bakery on or about October 17, 1994, preclude claimants from receiving unemployment benefits? With respect to all 77 claimants, the Board held:[6]

> "[T]he record is clear that at least three members of the Bakers Union, Local 114, actively participated in the strike, refusing to cross the picket lines to perform available work.[1] Claimants belonged to the same grade or class of workers employed at the premises immediately prior to the strike who participated in the strike. Because some of their members participated in the strike, claimants cannot requalify for benefits as provided by ORS 657.200(3)(c).[2]

---

about October 17, 1994, constituted an alternative basis for denying claimants' benefits.

[6] The language that is quoted is from the Board's opinion pertaining to the first 74 claimants. The Board's decision with respect to the remaining three claimants, *e.g.*, Cret, Lee, and Marckx, differs somewhat in form but is indistinguishable in substance.

"¹ Refusal to cross a picket line constitutes participation in a strike. *Cameron [et al] v. DeBoard[; MacInnes et al]*, 230 Or 411, 370 P2d 709 (1962).

"² Although the ALJ applied ORS 657.195 in this matter, we find no basis for applying that statute. *See Barrier v. Employment Division*, 29 Or App 387, 563 P2d 1230 (1977). The only question at issue is whether claimants requalified for benefits."

Moreover, and of particular pertinence to our discussion, the Board determined that the nonclaimant bakers' participation completely precluded claimants from receiving *any* benefits for the entire strike period, rather than merely barring entitlement to benefits from the date of that conduct (approximately October 17) forward. In other words, the Board held that the nonclaimant bakers' conduct not only prospectively precluded benefits, but retroactively divested claimants of any entitlement to benefits.

Finally, with respect to claimants Cret, Lee, and Marckx, the Board determined that those three claimants were not entitled to benefits not only for the reasons just described, but also, and alternatively:

"[B]ecause none of the claimants appeared at the hearing * * * there is no other evidence in the record to help us make reasonable inferences, and there is no way for us to determine whether claimants financed the strike in any way. Further, although claimants indicate on their Labor Dispute Questionnaire * * * that they did not picket, we do not know if they participated in the strike in any other way. Claimants failed to carry their burden of proof to establish that they did not finance or participate in the strike." (Footnote omitted.)

Claimants seek review, raising two assignments of error. First, all 77 claimants contend that the Board erred in concluding that the three nonclaimant bakery workers' refusal to cross the central bakery picket line precluded claimants from receiving unemployment benefits. Second, claimants Cret, Lee, and Marckx assert that the Board further erred in concluding that they had not met their burden

of proving that they had not financed or directly participated in the strike.

Our consideration of the first assignment of error is complicated by the fact that, as framed by the briefing, it is not merely a two-way dispute between claimants and Fred Meyer, but a three-cornered dispute among claimants, Fred Meyer, and respondent Employment Department (the Department). As noted, claimants argue simply that the Board erred in holding that the three nonclaimant bakers' conduct barred claimants from receiving benefits. Fred Meyer defends the Board's analysis in that regard and argues, alternatively, that: (1) Local 114's August 18, 1994, notice of intent to honor picket lines at the central bakery, and/or (2) claimants' refusal to perform the warehouse "struck work" constituted participation in the labor dispute, which independently barred any entitlement to benefits. Finally, the Department argues that the Board was correct in concluding that the nonclaimant bakers' conduct precluded claimants from receiving unemployment benefits; however, the Department argues that the Board erred in holding that that conduct retroactively divested claimants of any entitlement to benefits, rather than merely barring entitlement after the date of that conduct. The Department also vigorously disputes Fred Meyer's alternative arguments and, particularly, Fred Meyer's argument that claimants, by refusing to perform the struck warehouse work, had directly participated in the labor dispute, within the meaning of ORS 657.200(3)(b).

Notwithstanding the multiplicity of issues, this three-cornered crossfire ultimately reduces to a simple inquiry: Are claimants entitled to benefits throughout the strike period, to no benefits, or to benefits before the three nonclaimant employees refused to return to work, but not after? That simple question, however, is not susceptible to a simple answer. For clarity of analysis, we successively address the following questions:

(1) Did Local 114's August 18, 1994, notice of intent to honor the Teamsters' primary picket line at the central bakery constitute participation in the labor dispute?

(2) Did claimants' refusal to perform the struck warehouse work constitute participation in a labor dispute?

(3) Did the refusal of members of Local 114, other than claimants, to cross the Teamsters' picket line and return to work at the central bakery on or about October 17, 1994, preclude claimants from receiving unemployment benefits?

(4) If the answer to (3) is "yes," did that participation by other members of Local 114 divest claimants of any entitlement to unemployment benefits for the entire strike period, or only for the period after such participation?

■ The first question is easily answered. Fred Meyer argues that Local 114's August 18 notice precluded claimants from receiving benefits because that notice was, allegedly, a substantial factor in Fred Meyer's subsequent decision to shut down the central bakery. Fred Meyer points to certain testimony in the administrative record as demonstrating that causal link. However, the Board ascribed the central bakery's closure to factors that did not include Local 114's notice:

"The members of the Bakers Union, Local 114, became unemployed on August 19, 1994, *because the UFCW called a strike and the employer determined that it would be unable to transport its bakery products to the stores.*" (Emphasis supplied.)

That finding is supported by substantial evidence, and we are bound by it. ORS 183.482(8)(c). Accordingly, Local 114's notice was not so causally related to the bakery closure as to bar claimants from receiving benefits after August 19.

■ We similarly conclude that claimants' refusal to cross the picket line at Fred Meyer's warehouse to perform non-bakery "struck work" at that site did not preclude claimants from receiving unemployment benefits. In general, a nonstriking worker's refusal to cross a primary picket line constitutes direct "participation" in a labor dispute, ORS 657.200(3), which bars receipt of unemployment benefits. *See Cameron et al v. DeBoard; MacInnes et al*, 230 Or 411, 416, 370 P2d 709 (1962) ("Refusal to work behind a picket line constitutes participation within the meaning of [ORS 657.200(3)(b)]."). Nevertheless, claimants assert that that general proposition is inapposite where, as here, nonstriking

workers, who have lost their jobs because of a labor dispute, refuse to cross a primary picket line to perform work that is not their regular work. As support for their position, claimants invoke ORS 657.195(1). That statute provides, in part:

"Notwithstanding any other provisions of this chapter, no work is deemed suitable and benefits shall not be denied under this chapter to any otherwise eligible individual for refusing to accept new work under any of the following conditions:

"(a)   If the position offered is vacant due directly to a strike, lockout or other labor dispute."

Claimants argue that Fred Meyer's offer of warehouse work was an offer for "new work" in that the warehouse positions were vacant due to the strike. Fred Meyer counters that ORS 657.195(1) does not apply to workers who have been offered "struck work" by their existing employer; instead, it argues, ORS 657.195(1) only applies to those workers who have no existing relationship with the employer who offers them "struck work." Fred Meyer asserts that its view accords with cases interpreting and applying ORS 657.200(3) and ORS 657.195(1) and, particularly, with *Cameron* and *Barrier v. Employment Division*, 29 Or App 387, 563 P2d 1230 (1977).

In *Cameron*, the claimants were members of non-striking construction unions who became unemployed when other unions struck and picketed their employer's work site. Several of the claimants honored the primary picket lines and refused to perform their regular work. Thereafter, the employer instituted a lockout at the job site. The court held, in part, that those claimants who honored the picket lines before the lockout occurred were disqualified from receiving unemployment benefits because that conduct constituted participation in the labor dispute for purposes of ORS 657.200(3)(b). *Cameron*, 230 Or at 417.[7] Thus, *Cameron* was

---

[7] The court went on at length to consider whether other claimants, who had not honored the picket lines, were nevertheless disqualified under ORS 657.200(3)(b) because they had a sufficient community of interest with the striking unions and their members so as to be of the same "grade or class of workers" who were participating in the strike. *See Cameron*, 230 Or at 423-38. The disposition of that issue in *Cameron* is immaterial to our consideration of the "struck work" issue.

concerned with the disqualifying effect of the nonstriking workers' refusal to cross picket lines to perform their *regular* work. Nothing in that opinion purported to address the effect of a nonstriking worker's refusal to act as a strike breaker by crossing a picket line to perform new, "struck work." Indeed, *Cameron* does not even cite ORS 657.195.

*Barrier* is somewhat closer to the mark. In that case, the claimants were seasonal workers at the employer's cherry packing plant. During the summer, the claimants processed fresh cherries and, during the winter and early spring, they processed cherries stored in brine. All of the workers at the plant, including the claimants, were members of the same union. In late March and early April 1976, the employer laid off the claimants because of a lack of work, with the expectation that the claimants would be recalled in June when the fresh cherry season began. Sometime in May, before the season began, the employer's other (nonseasonal) workers went on strike, and the employer recalled the claimants to fill the strikers' positions. The claimants refused to cross the picket lines, choosing, instead, to join the picket lines and receive benefits from the union's strike fund. The Board held that the claimants had participated in the labor dispute and, thus, were not entitled to unemployment compensation benefits. ORS 657.200.

On review, the claimants argued that their refusal to perform the "struck work" did not constitute disqualifying "participation" because that work was "new work" within the meaning of ORS 657.195(1). We rejected that argument:

> "[T]he purpose of [ORS 657.195] was to prevent a worker who was a stranger to the labor dispute from having to choose between becoming a strikebreaker or losing unemployment benefits. The right to refuse the job vacated because of a strike is dependent upon whether the job is 'new work.' *This term presupposes an absence of an employer-employee relationship or of an attachment of the claimant to the proffered job.* In this case the petitioners were not terminated but were on a temporary layoff with the expectation they would be recalled based on the seniority list when work became available. *The jobs they were offered were jobs they had been in just prior to the layoff or jobs they had worked at on prior occasions. * * * They were*

*not strangers to this labor dispute but were directly involved by membership in the striking union, payment of union dues which were used to finance the strike, collection of strike benefits, participation in picketing and finally they would be included in any agreement that resulted from the labor negotiations.* It follows they had not refused 'new work' created by a labor dispute." *Barrier*, 29 Or App at 394 (emphasis supplied; citation omitted).

Thus, under *Barrier*, work is "new work" for purposes of ORS 657.195 if: (1) The claimant and the employer do not have a preexisting employer-employee relationship; *or* (2) regardless of the existence of an employer-employee relationship, the claimant has no "attachment * * * to the proffered job." *Id.*[8] That analysis accords with authorities from other jurisdictions construing and applying provisions that are virtually identical to ORS 657.195(1).[9]

Here, an employer-employee relationship clearly existed between Fred Meyer and the claimants at the time that Fred Meyer proffered the struck warehouse work. Claimants, like the claimants in *Barrier*, had been temporarily laid off with the full expectation that they would be recalled. However, unlike the claimants in *Barrier*, the present claimants had no "attachment * * * to the proffered job." 29 Or App at 394. There is no evidence in this record that any

---

[8] Fred Meyer also points to our observation in *Barrier*:

"There is yet another reason petitioners cannot avail themselves of ORS 657.195(1)(a). If, as the Board determined, petitioners' unemployment is due to a labor dispute and additionally they are not requalified under ORS 657.200(3), they are not 'otherwise eligible individuals' as required by ORS 657.195(1) before that statute becomes applicable." 29 Or App at 394.

Fred Meyer's reliance on that *dictum* is unavailing. As amplified below, the "struck work" that the claimants refused to perform was "new work" for purposes of ORS 657.195(1) and, thus, claimants' refusal to cross the warehouse picket line to perform that work did not constitute participation in the labor dispute for purposes of ORS 657.200(3)(b). Accordingly, claimants were requalified under ORS 657.200(3) and were "otherwise eligible individuals" for purposes of ORS 657.195(1), until the incident in mid-October when the three nonclaimant bakery workers refused to cross the primary picket line and return to their regular work at the central bakery.

[9] *See Fort Smith Chair Co. v. Laney*, 238 Ark 636, 383 SW2d 666 (1964); *Merryman v. Administrator, Unemployment Comp. Act*, 23 Conn Supp 233, 181 A2d 260 (1962); *Bilodeau v. Main Employment Security Comm.*, 153 Me 254, 136 A2d 522 (1987) *Tripp v. Alley Construction Co., Inc.*, 297 Minn 232, 210 NW2d 668 (1973).

of the claimants had ever worked at the warehouse or that any had ever otherwise performed warehouseman's work for Fred Meyer. Indeed, the ALJ expressly found that claimants "did not normally perform any warehouse functions." Moreover, unlike the claimants in *Barrier*, where the claimants and the striking workers were members of the same bargaining unit performing the same work at the same location,[10] the present claimants were members of a separate collective bargaining unit whose work, by definition, was distinct from that performed by members of the striking unions.

Because claimants had no "attachment" to the proffered warehouse work, that work was "new work" with respect to claimants. Consequently, their refusal to cross the warehouse picket lines to perform that work did not preclude claimants from requalifying for benefits under ORS 657.200(3).

■ We turn, then, to the third question: Did the three nonclaimant bakers' refusal to cross the picket line at the central bakery and return to their regular work on or about October 17 bar claimants from receiving unemployment benefits? The short answer—which the Board gave—is "yes." *See* ORS 657.200(3)(b); *Cameron*, above.

■ Under ORS 657.200(3)(c), an individual is not disqualified from unemployment benefits if he or she

"[d]oes not belong to a grade or class of workers of which, immediately before the commencement of the labor dispute, there were members employed at the premises at which the labor dispute occurred, any of whom are participating in or financing or directly interested in the dispute."

Stripped of the double negatives, section (3)(c) provides that, even if a worker does not directly participate in a labor dispute, he or she may still be precluded from receiving benefits if other members of the same "grade or class of workers" do participate in the labor dispute. As noted previously, 146 Or App at 149-50, in *Cameron* the court held that the nonstriking workers' refusal to cross the picket lines to return to their regular work constituted participation in the labor dispute

---

[10] As noted, the claimants in *Barrier* ultimately collected union strike benefits after refusing to cross the picket lines.

for purposes of ORS 657.200(3). Here, it is undisputed that the three nonclaimant bakers who refused to cross the central bakery picket lines on or about October 17 were members of the same "grade or class of workers" as the claimants. Thus, under ORS 657.200(3)(c), those three bakers' participation in the labor dispute barred claimants from requalifying for benefits.

■ Claimants attempt to avoid that result by suggesting that *Cameron* somehow does not control because "[j]udicial interpretation, not the words of the statute, makes refusing to cross a picket line participation in a labor dispute." Contrary to claimants' suggestion, *Cameron*'s interpretation of the statute is not merely "judicial gloss," but is, instead, a part of the statute "as if it were written into the law at the time of its enactment." *Holcomb v. Sunderland*, 321 Or 99, 105, 894 P2d 457 (1995). *Cameron*'s holding is, thus, dispositive. The three nonclaimant bakers' conduct rendered claimants ineligible for unemployment benefits.

■ That does not, however, end our inquiry. The Board's disposition precludes claimants from receiving benefits for the entire strike period, and not just for the period following the three bakers' conduct. The Department challenges that disposition, arguing that, as a matter of law, the three bakers' participation could not *retroactively* divest claimants of any entitlement to benefits for the period between the beginning of the strike and the bakers' participation.[11] Fred Meyer contends that the argument is not properly before us because neither claimants nor the Department raised the issue before the Board and because the Department, although appearing as respondent, has neither cross-petitioned nor cross-assigned error to the Board's determination in that regard.

Fred Meyer's "nonpreservation/nonreviewability" arguments with respect to the Department are misplaced. The Department, by virtue of its administration of the Unemployment Compensation Trust Fund from which unemployment benefits are disbursed, has properly responded to this

---

[11] Claimants did not make that argument in their brief but, at oral argument, joined in the Department's position.

appeal—and a respondent is always free to make concessions that it did not make previously.[12] Here, claimants have consistently asserted that they are entitled to receive benefits from the Fund for the entire strike period, from August 19 through November 12, 1994. The Department, while arguing that claimants' are not entitled to benefits for the period after the nonclaimant bakers' conduct, now concedes that claimants are entitled to benefits until that conduct occurred. The Department's concession obviously does not *bind* Fred Meyer, which has a distinct financial stake in the matter. Nevertheless, we may properly consider that concession and its premises in assessing claimants' entitlement, if any, to benefits for the period from August 19 until the three nonclaimant bakers refused to cross the central bakery picket line.

■     The Department's concession is sound. ORS 657.200(1), by its terms, contemplates that eligibility for unemployment benefits is to be assessed on a weekly basis:

> "An individual is disqualified for benefits, *for any week* with respect to which the Director of the Employment Department finds that the unemployment * * * is due to a labor dispute * * *." (Emphasis supplied.)

ORS 657.200(3) provides that the disqualification described in subsection (1) does not apply if the claimant meets the three cumulative requalification criteria set out in subsections (3)(a)-(c). Thus, the Department must make a weekly determination of whether a claimant, who would otherwise be disqualified under ORS 657.200(1), continues to meet the requalification standards of ORS 657.200(3). That construction also accords with the statute's broader context. *See, e.g.*, ORS 657.155(1) (omnibus unemployment benefits eligibility provision, which provides that individuals "shall be eligible to receive benefits with respect to any week" in which certain conditions are satisfied); ORS 657.155(3) ("[t]he director shall either promptly allow credit of pay benefits for any week for

---

[12] As noted above, the parties' arguments before the ALJ and the Board focused on the effect of claimants' refusal to perform "struck work" and, to a lesser extent, on the effect of Local 114's prestrike notification. Fred Meyer did not argue that the nonclaimant bakers' actions barred claimants' entitlement to benefits. Thus, the Department had no reason to anticipate and address the "retroactive divestment" question until the Board issued its decisions.

which benefits are claimed or promptly give notice of denial thereof").

Under the statutory framework, claimants were disqualified from receiving benefits beginning on August 19, ORS 657.200(1), but were immediately requalified to receive benefits for each week so long as they satisfied the three cumulative requalification criteria of ORS 657.200(3). Thus, the three nonclaimant bakers' refusal to cross the central bakery picket line, which violated the third of the three cumulative requalification criteria, ORS 657.200(3)(c), disqualified claimants from receiving benefits for the week of that disqualifying participation and thereafter. The nonclaimant bakers' conduct did not, however, retroactively divest claimants of their entitlement to benefits for the previous weeks.[13]

Given that conclusion, we must remand case CA A90588 (which pertains to all claimants except, Cret, Lee and Marckx) to the Board for further proceedings.[14]

We turn, then, to the second assignment of error, which pertains only to claimants Cret, Lee, and Marckx. Those claimants contend that the Board erred in concluding that they did not adduce sufficient evidence that they were not "participating in, financing or directly interested in the labor dispute." ORS 657.200(3)(b). In particular, the Board concluded:

"Claimants carry the burden of proof to establish that they re-qualify for benefits pursuant to the provisions of ORS 657.200(3)(b) and (c). Claimants must establish a *prima facie* case that they did not participate in, finance or have a direct interest in the outcome of the strike. We can infer

---

[13] Neither the Board nor Fred Meyer has identified any statutory basis for such "retroactive divestment." We note, moreover, that the Board's approach would sanction egregious results: for example, under that approach, if one member of a 10,000-member nonstriking union refused to cross a primary picket line on the last day of a two-year strike, that conduct would divest every other member of his or her entitlement to unemployment benefits for the preceding two years.

[14] One possible issue before the Board on remand would be the precise date of the three bakers' refusal to cross the central bakery picket line. Although claimants and the Department appear to assume that that conduct occurred on October 17, 1994, neither the ALJ nor the Board entered an express finding to that effect.

from the record that claimants' wages or working conditions would not have been affected by the strike, and possibly reach the conclusion that claimants had no direct interest in the labor dispute. However, because none of the claimants appeared at the hearing on November 29, 1994, or March 15, 1995, and there is no other evidence in the record to help us make reasonable inferences, there is no way for us to determine whether claimants financed the strike in any way. Further, although claimants indicate on their Labor Dispute Questionnaires (Exhibit 4) that they did not picket, we do not know if they participated in the strike in any other way. Claimants failed to carry their burden of proof to establish that they did not finance or participate in the strike." (Citations omitted; footnotes omitted.)

Cret, Lee, and Marckx assert that the Board's premise that "there is no other evidence in the record to help us make reasonable inferences [as to] * * * whether claimants financed the strike in any way" is erroneous in that there is such evidence in the record, and is also inconsistent with the Board's assessment of the record in the companion case involving the other 74 claimants.

A brief procedural recapitulation puts those arguments into perspective. As described previously, the administrative hearing pertaining to all claimants, except Cret, Lee and Marckx, occurred in November 1994. At that time various exhibits were admitted, but only two of the 74 claimants testified. In March 1995, the administrative hearing pertaining to Cret, Lee, and Marckx occurred, with the same ALJ presiding. The issues pertaining to claimants in the November 1994 and March 1995 hearings were identical. By the time the March hearing occurred, the ALJ had already rendered his findings and conclusions with respect to the matter heard in November. At the March hearing, the parties, at the ALJ's direction, stipulated that the entire record and the hearing decision from the November matter would be incorporated into the record of the March hearing. Consequently, Cret, Lee, and Marckx did not submit independent testimony at the March hearing. The ALJ subsequently determined that Cret, Lee, and Marckx, like the 74 November claimants, were entitled to benefits.

In reviewing the ALJ's decision with respect to the 74 claimants, the Board observed:

"*Although we might be able to infer from the record in this matter that claimants did not participate in, finance or have a direct interest in the labor dispute,* the record is clear that at least three members of the Bakers Union, Local 114, actively participated in the strike, refusing to cross the picket lines to perform available work." (Citation omitted; emphasis supplied.)

Conversely, in reviewing the identical record with respect to Cret, Lee, and Marckx, the Board opined that there was no evidence in the record that would support a reasonable inference as to whether Cret, Lee, or Marckx participated in, or financed the strike.[15]

Given that procedural posture, as well as the content of the administrative record, we agree with Cret, Lee, and Marckx that the Board erred in two related respects. First, there is evidence in the record from which the Board *could* make the requisite reasonable inferences. During the November hearing, which was incorporated by reference into the record of the March hearing, Gene Baudoin, an agent for Local 114, testified that the bakers did not have a direct financial interest in the strike because Local 114's wages, hours and working conditions "are not tied with the Teamsters. Any rights that they get, we do not necessarily get." Baudoin further testified that Local 114 did not give any financial support "to the Teamsters or to the strike of Local 555." Moreover, Diana Osterberg, one of the 74 claimants, testified that, to her knowledge, no member of Local 114 participated in the picket lines. From that evidence, the Board *could* have reasonably inferred that Cret, Lee, and Marckx had no direct financial interest in the strike; that they did not finance the strike; and that they did not participate in the strike. We do not suggest that the evidence *compelled* such an inference, only that it could reasonably support such an inference. The Board's assumption to the contrary was erroneous.

Second, and in related fashion, the Board's conclusion that the evidence could not support the necessary inferences is inconsistent with its conclusion that the identical evidence with respect to the other 74 claimants could support

---

[15] The Board raised this issue *sua sponte*.

the necessary inferences. If the record was sufficient for the Board to make the requisite inferences as to all 74 claimants in that matter, including the 72 who did not testify individually, it was similarly sufficient with respect to Cret, Lee, and Marckx. The Board offered no rational explanation for its contradictory conclusions as to the sufficiency of evidence in the two matters. *Tilden v. Board of Chiropractic Examiners*, 135 Or App 276, 281, 898 P2d 219 (1995) (although reviewing "court does not substitute its judgment as to what inferences should be drawn from the evidence," agency must articulate "a rational relationship between its findings and its conclusion").

We hold, accordingly, that the Board erred in concluding that claimants Cret, Lee, and Marckx had failed to adduce sufficient evidence to permit a reasonable inference that they had satisfied the requalification requirements of ORS 657.200(3). We remand for the Board to render findings as to whether Cret, Lee, or Marckx directly participated in, or financed, the strike so as to preclude requalification for benefits between August 19, 1994, and the date of the three non-claimant bakers' participation.

Reversed and remanded for further proceedings in both CA A89589 and CA A90588.